**James FOWLER, Plaintiff,**

v.

**Leon J. VINCENT, Superintendent of Green Haven Correctional Facility, and Joseph Powers, Correctional Officer of Green Haven Correctional Facility, Defendants.**

No. 72 Civ. 4759.

United States District Court,
S. D. New York.

June 6, 1978.

Fink & Meyers, New York City, for plaintiff; Elizabeth M. Fink, Daniel L. Meyers, New York City, of counsel.

Louis J. Lefkowitz, Atty. Gen. of the State of New York, New York City, for defendants; Joseph W. Henneberry, New York City, of counsel.

LASKER, District Judge.

In 1972, James Fowler, then an inmate at the Green Haven Correctional Facility, filed this suit under 42 U.S.C. § 1983, alleging that his constitutional rights had been violated by Joseph Powers, a guard at Green Haven, and by Leon Vincent, the facility's warden. He claimed that he was the victim of an unprovoked assault by Officer Pow-

ers, in violation of his Fourteenth Amendment right to due process, and that he was denied certain procedural rights by Warden Vincent "and his agents" at the disciplinary hearings which followed the assault in violation of the Fifth, Sixth and Fourteenth Amendments.

Six years after the filing of the complaint, the State moves under Rule 12(c), F.R.Civ.P., for judgment on the pleadings. For the reasons which follow, the motion is granted in part and denied in part.

## I.

*Failure to State a Constitutional Claim Against Joseph Powers*

In 1973, the State made an earlier motion to dismiss the suit as to Powers arguing that, while the facts alleged in the complaint might constitute a state court action for tort against Vincent, they did not establish a § 1983 action for violation of Fowler's constitutional rights. Judge Bauman, who acted on the motion, rejected the argument, holding that the facts alleged in the complaint were substantially similar to those in *Johnson v. Glick,* 481 F.2d 1028 (2d Cir. 1973), in which the Court of Appeals held that an assault by a prison guard on an inmate could so "shock the conscience" as to deprive the inmate of his right to liberty under the Due Process Clause.

In its present motion, the State again argues that the complaint alleges a tort claim and not a constitutional violation. In support of its argument, it relies both on new law, the Supreme Court's decision in *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), and an attempt to convince this court that Judge Bauman erred in finding the facts in *Fowler* essentially the same as those in *Johnson v. Glick.*

In *Paul v. Davis,* the plaintiff sued for libel various police officers who had included his name in a flyer of "active shoplifters" which was distributed to local shopowners. The Supreme Court held that such a claim could not be brought under § 1983 because a person's interest in reputation alone did not implicate any liberty or property interest sufficient to invoke the procedural protections of the Due Process Clause. The State asserts that *Paul* represents a reduction in the remedial scope of § 1983 to situations in which "there is a clear constitutional deprivation and firm basis for federal intervention." (Memorandum, p. 9)

■ We agree with the State that *Paul* is an emphatic reminder that not every tort rises to the level of a constitutional violation. However, that determination does not affect our analysis of this case. Even the State acknowledges that in certain circumstances an assault by a prison guard can amount to a deprivation of constitutional rights. Therefore the real question is whether the facts alleged in the complaint are such as to establish a violation of Fowler's right to due process within the meaning of *Johnson v. Glick, supra,* 481 F.2d 1028, or only that a common law tort occurred.

In determining when the "constitutional line" has been crossed in an action for assault, Judge Friendly's majority opinion in *Johnson* directed a court to look to the following factors:

"  .   .   . the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." 481 F.2d 1028, 1033.

We agree with Judge Bauman that *Johnson* is applicable here since the facts alleged indicate that Powers' assault was unprovoked and unnecessary to maintain order, that Powers acted out of malice, and that Fowler, who claims to have lost his senses of taste and smell as a result of the attack, was severely injured. Accordingly, we find that Fowler has alleged a claim for relief under § 1983.

## II.

*Procedural Requirements of the Disciplinary Hearing*

■ Fowler alleges that the procedures followed at the disciplinary hearing held

after his altercation with Powers were constitutionally deficient. He bases his claim on the fact that he was denied counsel and the right to present witnesses and to cross-examine his accuser despite the pendency in state court of a criminal action based on the same event which was the subject of the disciplinary hearing. In deciding the earlier motion to dismiss, Judge Bauman rejected Fowler's claim that he was entitled to counsel but held that, because of the concurrency of state criminal proceedings, Fowler should have been informed by the prison officials that he was entitled to use immunity as to any statements he made during the administrative hearings.

In its present motion, the State again relies on new law, *Baxter v. Palmigiano,* 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976), to support its argument that the requirements of due process were satisfied at the disciplinary hearing. We agree with the State that Fowler's claims are disposed of by the Supreme Court's ruling in *Baxter.* In that case, Palmigiano, an inmate charged with inciting a prison riot, was informed that, for purposes of his disciplinary hearing, he had a right to remain silent but that, if he did so, his silence would be held against him. Moreover, he was told that he might be prosecuted for a violation of state law and that he should consult an attorney, who, however, would not be permitted to attend his disciplinary hearing.

In response to Palmigiano's claim that the disciplinary hearing violated his right to due process, the Supreme Court held that the rule of *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), that inmates are not entitled to counsel, and that prison officials may in their discretion deny inmates the right to call witnesses, cross-examine and confront their accusers at disciplinary hearings, applied to Palmigiano's situation regardless of the possibility of a criminal prosecution. Moreover, the Court held that it did not violate Palmigiano's privilege against self-incrimination to draw an adverse inference from his silence since, under Rhode Island law, silence alone could not automatically support a finding of guilt.[1] Only if an inmate is compelled to furnish *testimonial* evidence, the Court stated, would prison officials be required to provide the inmate with use immunity.[2]

The procedures followed at Fowler's disciplinary hearing were substantially the same as those followed at Palmigiano's. Like Palmigiano, Fowler was not compelled to testify but chose to remain silent. Moreover, the State did not seek to make use of his silence in any criminal proceeding. Therefore, under *Baxter,* the officials were not required to offer Fowler use immunity. It is true that, at the prompting of the Parole Board, Fowler did make a statement during his parole hearing. However, because the criminal prosecution against Fowler was dropped, no use was ever made of this statement, and Fowler cannot establish that he was damaged as a result of the prison officials' failure to offer him use

1. Unlike Palmigiano, Fowler does not assert that the State drew an adverse inference from his silence or that it would have been unconstitutional to have done so. *Baxter* establishes, however, that the State is free to draw such an inference at a disciplinary hearing unless State law permits a finding of guilt on the basis of silence alone. Since Fowler does not raise this point, however, we do not consider what the requirements for a finding of guilt for an infraction of prison rules are in New York.

2. In this regard, the Court made the following statements:
    "Prison disciplinary hearings are not criminal proceedings; but if inmates are compelled in those proceedings to furnish testimonial evidence that might incriminate them in later criminal proceedings, they must be offered 'whatever immunity is required to supplant the privilege' and may not be required to 'waive such immunity.'" 425 U.S. 308, 316, 96 S.Ct. 1551, 1557, 47 L.Ed.2d 810. (citations omitted)
    "Had the State desired Palmigiano's testimony over his Fifth Amendment objection, we can but assume that it would have extended whatever use immunity is required by the Federal Constitution." *Id.* at 318, 96 S.Ct. at 1558.

immunity. Accordingly, we find that Fowler's due process rights were not violated.[3]

## III.

*Failure to State a Claim Against Warden Vincent*

The State also moves to dismiss as to Warden Vincent on the ground that the law in this circuit bars the bringing of a § 1983 suit based on the doctrine of respondeat superior.[4] *Mukmuk v. Commissioner,* 529 F.2d 272, 275 (2d Cir. 1976); *Johnson v. Glick, supra,* 481 F.2d 1028, 1033–34 (2d Cir. 1973). Fowler responds that Vincent is being sued in his individual capacity and not on the basis of respondeat superior. Because of our disposition of the merits of the claim against Vincent, however, we need not decide here whether the complaint properly states a claim against Vincent.

The motion is denied to the extent that it seeks to dismiss as to Joseph Powers and is granted in all other respects.

It is so ordered.

---

**3.** Although no allegation to this effect is made clearly in the complaint, Fowler also asserts in his answer to the motion that he should have been accorded the full range of due process rights set out in *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), during his hearing before the Parole Board. The nature of the due process rights to be accorded an inmate at a hearing rescinding his parole date presents an important question which we are reluctant to decide because it has been raised so late in the proceedings and briefed so inadequately—the State has not even had the opportunity to address the issue. Moreover, the circumstances under which the Parole Board reached its decision here differ radically from those involved in *Morrissey.* The alleged infraction of prison rules involved in this case led to the disciplinary hearing as well as the meeting of the Parole Board. Since the disciplinary hearing, which we find was properly conducted, resulted in the loss of thirty days of good time and in thirty days of segregation, Fowler's parole date had to be extended, regardless of the procedures followed at the parole hearing. Because the decision of the Parole Board was not made independently but hinged on the outcome of the disciplinary hearing, we find the analogy to *Morrissey* nondispositive if not inappropriate.

**4.** Warden Vincent is named in the complaint only insofar as he was responsible for the procedures followed at the disciplinary hearings and the meeting of the Parole Board.