Lloyd E. BODDIE, Jr., Plaintiff,

v.

Thomas A. COUGHLIN, III, Charles Scully, and Officer H. Rosario, Defendants.

No. 82 Civ. 1350 (KTD).

United States District Court, S.D. New York.

March 27, 1984.

---

Lloyd E. Boddie, Jr., pro se.

Robert Abrams, Atty. Gen., State of N.Y., New York City, for defendants; Myron Paul Schamis, Asst. Atty. Gen., New York City, of counsel.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

Lloyd E. Boddie, Jr., brought this *pro se* section 1983 action against Thomas A. Coughlin, III, Commissioner of Correctional Services for New York State, Charles Scully, Superintendent of Green Haven Correctional Facility ("Green Haven"), and Green Haven Correction Officer Harry Rosario. Boddie alleges, *inter alia*, harassment, excessive punishment of confinement in a Special Housing Unit, and other various alleged denials of his constitutional rights. By Memorandum and Order dated July 22, 1982, I denied defendants' motion to dismiss Boddie's complaint and directed defendants to submit information concerning Green Haven's internal administrative grievance procedures. 543 F.Supp. 986. By a subsequent Memorandum and Order dated August 25, 1982, I found that Green Haven's Inmate Grievance Resolution Committee ("IGRC") comported with the minimum standards enumerated in 42 U.S.C. § 1997e(a)(2). Accordingly, Boddie was ordered to exhaust his available administrative remedies.

In accordance with this Order, Boddie filed four separate grievances in September 1982. None of these grievances concerned matters contained in his section 1983 complaint. Soon thereafter Green Haven and Boddie were able to resolve informally all four grievances. Nevertheless, plaintiff sought a preliminary injunction on October 6, 1982. Before this injunctive request was entirely resolved, defendants made the instant motion for summary judgment. In support, defendants submit extensive affidavits of the individuals involved. Plaintiff has not opposed the motion. Examining plaintiff's claim in the light most favorable to him, but in view of the extensive and uncontroverted affidavits provided by defendants, I find defendants entitled to judgment as a matter of law. Accordingly, for the reasons that follow plaintiff's complaint is dismissed.

## FACTS

Plaintiff cites eight instances of allegedly unconstitutional conduct by the defendants. A short summary of these allegations is as follows:

(1) That on November 16, 1981, his request to attend his brother's funeral was improperly denied;

(2) That on November 16, 1981, in the J School Corridor, Rosario improperly instigated an altercation with plaintiff, and improperly filed a Misbehavior Report against plaintiff;

(3) That on November 16, 1981, upon his admission to the Special Housing Unit ("SHU"), plaintiff was ordered to disrobe and was examined by a female nurse in violation of the tenets of his Muslim faith;

(4) That the penalty imposed at the close of the Superintendent's Proceeding, held November 24 and 27, 1981, based on the incident in the J School Corridor, was excessive;

(5) That the plaintiff improperly was made to wait approximately twenty days to see the psychiatrist, although he had complained of depression and sleeplessness as a result of his brother's death;

(6) That the toilet in plaintiff's cell in SHU was not repaired though he had complained that it leaked water onto the cell floor when flushed;

(7) That because of shortages and delays in laundry service, plaintiff was able to

change his underwear only twice in sixty days; and

(8) That the plaintiff had difficulty in getting denture adhesive either from the Commissary or the Infirmary and that when denture adhesive was ultimately procured, plaintiff was not given the hot water necessary to use it properly.

Plaintiff's complaint also sought injunctive relief, to prevent reprisals against him for the commencement of this action, and damages in the amount of $50,000 to help pay medical bills for professional help that he believed he would need after his release from prison.

The complaint, plaintiff's other submissions, and defendants' uncontroverted affidavits establish the following facts underlying each of plaintiff's claims:

Correction Law section 113 permits inmates to attend the funerals of close relatives subject to rules and regulations promulgated by the Commissioner of Correctional Services. *See* N.Y.Correct.Law § 113 (McKinney Supp.1983). Approval or disapproval of funeral visits is a discretionary decision made by the facility's Superintendent, upon the recommendation of the Deputy Superintendent for Security Services.

In the instant case, plaintiff's brother died and funeral services were arranged for November 17, 1981. On November 13, 1981, plaintiff filed a request seeking to attend his brother's funeral. On November 16, 1981, Deputy Superintendent for Security Services, Dean Riley, recommended disapproving the request based in large part on the fact that plaintiff was presently incarcerated for the forcible rape of his sister-in-law. Furthermore, Riley concluded that plaintiff would present an undue risk to the escorting correction officers, to himself, to members of plaintiff's family, and to the general public. Defendant Superintendent Scully thereafter denied plaintiff's request for a funeral visit. Plaintiff claims that "matters with [his] family had been patched up," and that defendant Scully had not made a correct evaluation and determination.

Also on the morning of November 16, 1981, at approximately 9:20 a.m. in the J School Corridor, plaintiff was ordered by defendant Rosario to do his work assignment. When plaintiff admittedly ignored Rosario, the Correction Officer ordered plaintiff to his cell. Plaintiff and defendant Rosario thereafter engaged in a heated exchange. Plaintiff described the altercation on page two of his complaint:

I got up walk over to [Rosario] and asked don't you have a heart or feeling any kind of human concern for people you know the bad news I received. At that point he put his fingers up to my face and told me your news is your problem get out of his face. I reply you will get your work done and if you don't leave me alone you are going to have trouble out of me, walked away.

Rosario somewhat similarly described the incident as follows:

Inmate Boddie jumped out of his seat, followed me down the corridor and proceeded to ... push me several times on my right shoulder, telling me that I don't have to tell him anything and not to fuck with him because he will kick my ass. I told Inmate Boddie to "back off on me" and he did. He returned back to his seat, cursing and waving his hands saying that "If I bothered him again that he will hurt me."

Inmate Misbehavior Report To Superintendent, Schamis Affidavit, Exh. D at 2.

As a result of this incident, Boddie was placed in SHU. Before admission, plaintiff was given a customary medical examination by a female nurse. This required Boddie to undress. Boddie apparently did not protest the examination at the time, he merely assumed that the correction's officers knew that he was a Muslim, and that his faith prohibited him from disrobing before a female. *See* Complaint at 2–3.

On November 19, 1981 the Adjustment Committee reviewed the Misbehavior Report and referred the matter to a Superintendent's Proceeding which was held on November 24 and 27, 1981. Plaintiff was

charged with Assault, a violation of order and security, use of abusive and obscene language, refusing a work assignment, and with threats. At the initial November 24th session of the proceeding, plaintiff refused to enter a plea. Later that same day, plaintiff was interviewed by Correction Counselor R. McCarron, who took plaintiff's statement, and the statements of inmate witnesses.

At the second session held November 27, 1981, plaintiff again refused to speak. Plaintiff thereafter was found guilty as charged, based on the written reports, interviews with the staff, and on plaintiff's refusal to respond to any questions. The disposition recommended was 365 days confinement to SHU, 365 days loss of commissary, 365 days loss of phone calls, and plaintiff's referral to the Classification Committee for possible transfer. The explanation given for this disciplinary action was the serious nature of the Misbehavior Report, and plaintiff's past record which included six prior incidents. Two of these prior incidents had warranted referral to Superintendent's Proceedings. Superintendent Scully confirmed this disposition.

On November 30, 1981, plaintiff was seen by Jeffrey Riflin, a Registered Physician's Assistant at the Infirmary, in response to plaintiff's request for psychiatric services. Riflin referred plaintiff's case to the Psychiatric Satellite Unit ("PSU") where plaintiff was screened that same day by Jean Beck, a Registered Nurse. She scheduled plaintiff to see the psychiatrist.

Plaintiff was next seen at the PSU on December 6, 1981 by Patricia Raimo, a Registered Nurse. She stated that "[i]nmate claims he never sleeps. Appears depressed but does not appear to be psychotic. Advised we were aware of his letter and would make an effort to be sure he is seen by PSU." Finally, on December 10, 1981, plaintiff was seen by the psychiatrist Dr. Chung. Dr. Chung found that plaintiff was depressed and suffered from poor sleep. He prescribed the antidepressant, Tofranil. In accordance with Dr. Chung's directions, plaintiff's Tofranil dosage first was increased, and then decreased, discontinuing altogether as plaintiff progressed. *See* Schamis Affidavit, Exh. N.

Plaintiff also alleges that the toilet in his SHU cell leaked when flushed. He asserts that the officials he notified failed to rectify the problem. Defendants admit that the Green Haven Maintenance Department experienced difficulty in finding replacement gaskets for the stainless steel toilet and sink units which were installed in the SHU cells ten to twelve years ago. As a result, some flushing mechanisms leak water when depressed, though never enough water to flood the cell. The Maintenance Department, however, had no record of any extraordinary problems with the plumbing in SHU Cell 29—plaintiff's SHU cell—nor is there a reflection of such a problem in the SHU Log Book. Furthermore, Deputy Superintendent Riley states that Green Haven takes all uninhabitable cells out of service until repaired. *See* Riley Affidavit at ¶ 4.

Plaintiff's allegation of clothing shortages, laundry delays, and lack of denture adhesive also were substantiated in part by defendants. Deputy Superintendent Riley states that from September 1981 to April 1982, the facility experienced back-orders for state-issue clothing. Thus, some clothing shortages did exist. Nevertheless, the facility under the circumstances permitted inmates in SHU to wash out their underwear and other clothing, and to dry them at the foot or head of their beds. *Id.*

Defendants also admit that during the time in question, the Commissary had no denture adhesive in stock. Denture adhesive, however, was special-ordered by the Regional Health Services Administrator on behalf of plaintiff. Access to hot water, necessary for the use of denture adhesive, was provided to inmates twice a day.

With these facts in mind, I find that defendants are entitled to judgment as a matter of law. The complaint is dismissed against defendant Coughlin because he had no personal involvement in any of the allegedly unconstitutional conduct and because he is qualifiedly immune from liabili-

ty. The complaint is dismissed against defendant Scully because he also enjoys qualified immunity for his discretionary decisions which plaintiff alleges were unconstitutional. And the complaint against defendant Rosario is dismissed because his conduct, as alleged by plaintiff, does not rise to a constitutional level.

### DISCUSSION

At the outset I note that "[w]hen a motion for summary judgment is made and supported [by sworn affidavits,] an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Boddie has failed to contradict any of defendants' affidavits. *See Wyler v. United States,* 725 F.2d 156 (2d Cir.1983) (unopposed affidavits established grounds for summary judgment dismissing plaintiff's *Biven's* action).

Furthermore, Boddie has failed to comply with Southern District of New York Local Rule 3(g) which provides that "all material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party." Boddie did not file an opposing statement. Thus, under the facts set forth in plaintiff's complaint, and in defendant's Rule 3(g) statement, it is apparent that there are only three instances of personal involvement by the defendants. Defendant Scully disapproved plaintiff's funeral visit, based on the recommendation of Deputy Superintendent Riley, and he confirmed the disposition of the Superintendent's Proceeding, based on the recommendation of the Hearing Officer. The sole allegation against Rosario involves the incident in the J School Corridor. No personal involvement by Coughlin is alleged in the complaint or revealed in any of the other submissions by the parties.

■ "[P]ersonal involvement of defendants in alleged constitutional depriva-

tions is a prerequisite to an award of damages under § 1983." *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978). *Respondeat superior* is not a valid basis for liability under section 1983. *See Rizzo v. Goode,* 423 U.S. 362, 375–77, 96 S.Ct. 598, 606–07, 46 L.Ed.2d 561 (1976). Therefore, for this reason alone the complaint must be dismissed as against defendant Coughlin. As against defendants Scully and Rosario all of the allegations except the three cited above must be dismissed.

■ The complaint must also be dismissed as against defendants Coughlin and Scully because they are qualifiedly immune from liability for the challenged decisions. As stated by the Supreme Court in *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory rights of which a reasonable person would have known." Superintendent Scully exercised his discretionary power in denying plaintiff's request to attend a funeral, and in affirming the Superintendent's Proceeding disposition. Boddie has not cited any "clearly established" rights that were violated by these decisions, and I am unaware of any such rights. Boddie has not cited any defects, due process or otherwise, in the manner in which the Superintendent's Proceeding was conducted, and I cannot discern any. Defendant Coughlin's putatively unconstitutional conduct is not even alleged. Therefore, I find that defendants Coughlin and Scully are entitled to qualified immunity which has not been alleged to be overridden by plaintiff. Accordingly, the entire complaint must be dismissed as against defendants Coughlin and Scully.

■ Finally, the complaint against the remaining defendant Rosario must be dismissed because the conduct alleged—the J School Corridor incident—does not rise to a

constitutional level for the purposes of section 1983. First, according to plaintiff, only words passed between he and Rosario. This alone would be an insufficient allegation to constitute a constitutional violation. *See Johnson v. Glick*, 481 F.2d 1028, 1030, 1033–34 (2d Cir.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 464, 38 L.Ed.2d 325 (1973). Furthermore, prison officials are permitted to use some reasonable force to administer prison regulations. In short, the circumstances surrounding the J School Corridor cannot constitute a constitutional violation. Accordingly, plaintiff's complaint against Rosario must be dismissed.

In sum, defendants have demonstrated that they are entitled to summary judgment. The motion is granted and plaintiff's complaint is dismissed.

SO ORDERED.