Adam S. AVRATIN, Plaintiff,

v.

M. BERMUDEZ, in his individual capacity, Defendant.

No. 99CV2119DMS (POR).

United States District Court,
S.D. California.

Jan. 5, 2006.

Timothy Alan Horton, Latham and Watkins, San Diego, CA, for Plaintiff.

Adam S. Avratin, Plaintiff, in pro per.

Deputy Attorney General, Susan E. Coleman, Office of the California Attorney General, San Diego, CA, for Defendants.

**ORDER (1) REJECTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION; (2) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

SABRAW, District Judge.

This matter comes before the Court on Defendant's motion for summary judgment. Plaintiff filed an opposition to the motion, and Defendant filed a reply. Pursuant to 28 U.S.C. § 636(b)(1)(B) and Civil Local Rule 72.3, the motion was referred to a United States Magistrate Judge for a Report and Recommendation ("Report"). On September 28, 2005, Magistrate Judge Louisa S. Porter issued her Report, recommending that the Court deny Defendant's motion. Neither party filed objections to the Report.

After reviewing the Report, this Court scheduled oral argument on Defendant's motion, which was held on December 16, 2005. Timothy Horton, Esq. appeared on behalf of Plaintiff, and Susan Coleman, Esq. appeared on behalf of Defendants. For the reasons set out below, the Court rejects the Report, and grants Defendant's motion.

## I.

### STANDARD OF REVIEW

■ This district court's role in reviewing a magistrate judge's report and recommendation is set forth in 28 U.S.C. § 636(b)(1). Under this statute, the district court "shall make a *de novo* determination of those portions of the report ... to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." *Id.* When no objections are filed, the court may assume the correctness of the magistrate judge's findings of fact and decide the motion on the applicable law. *Campbell v. United States Dist. Court,* 501 F.2d 196, 201 (9th Cir.1974); *Johnson v. Nelson,* 142 F.Supp.2d 1215, 1217 (S.D.Cal.2001). Under such circumstances, the Ninth Circuit has held that "a failure to file objections only relieves the trial court of its burden *to* give *de novo* review to factual findings; conclusions of law must still be reviewed *de novo.*" *Barilla v. Ervin,* 886 F.2d 1514,

1518 (9th Cir.1989), *overruled on other grounds by Simpson v. Lear Astronics Corp.,* 77 F.3d 1170, 1174 (9th Cir.1996), (citing *Britt v. Simi Valley Unified Sch. Dist.,* 708 F.2d 452, 454 (9th Cir.1983)).

## II.

### FACTUAL BACKGROUND

This case arises out of a fight between two inmates on February 28, 1998, at Centinela State Prison. Plaintiff Adam Avratin, an inmate housed at Centinela, was involved in the fight. Defendant M. Bermudez, a correctional officer at the facility, intervened in the fight and used force to stop the disturbance. Defendant's use of force resulted in injuries to Plaintiff and is the subject of this action.

While on the Administrative Segregation exercise yard with numerous other inmates, Plaintiff engaged in a fistfight with inmate Williams. Williams approached Plaintiff while Plaintiff was involved in conversation with another inmate. Williams threw a "blind-side" punch, striking Plaintiff in the head. Plaintiff recovered quickly and a heated fight ensued, with both inmates on the ground wrestling and exchanging repeated blows. Defendant was providing coverage for the yard when the fight broke out; he was standing behind a fence that enclosed the yard. Defendant twice ordered the inmates to "get down" or "stop fighting," but Plaintiff and Williams did not comply. The numerous other inmates in the yard complied with orders and sat down.

During the fight, Defendant inserted a 37mm launcher into a gun port in the fence and fired a 264 W multiple wooden baton round toward Plaintiff and Williams. Defendant fired two rounds. While Defendant was firing his launcher, Correctional Officer Lee was firing pepper spray at the subject inmates from behind the fence. Despite the firing of the baton rounds and the pepper spray, the inmates continued fighting. Correctional Officer Brown, who was in the control tower above the yard, attempted to discharge his own baton launcher. The launcher misfired, however, and Officer Brown activated an alarm to alert other staff of the incident. After ejecting the misfired round and reloading his launcher, Officer Brown discharged a round toward the inmates.

After firing his second round, Defendant reloaded his launcher and moved to another gun port approximately eight to nine feet away from the inmates. From that port, Defendant fired another round toward the inmates.

Plaintiff and Williams eventually stopped fighting, laying in a prone position on the ground. The deployment of the wooden rounds and pepper spray did not immediately cause the inmates to stop fighting. A videotape captured the entire disturbance.

During the course of the incident, Plaintiff received abrasions to his shoulder, knee and chest, a deep wound on his right thigh, and swelling on his face.

## III.

### DISCUSSION

Defendant raises two arguments in support of his motion for summary judgment. First, he argues Plaintiff has failed to establish Defendant violated his constitutional rights, and Plaintiff has failed to demonstrate causation. Second, Defendant asserts he is entitled to qualified immunity.

Qualified immunity shields government officials performing discretionary functions from liability for civil damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Claims of qualified immunity re-

quire a two-step analysis. First, the court must consider whether the facts alleged, taken in the light most favorable to the party asserting the injury, show the defendant's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). If the allegations do not establish the violation of a constitutional right, "there is no necessity for further inquiries concerning qualified immunity." *Id.* If the allegations could make out a constitutional violation, however, the court must then ask whether the right was clearly established—that is, whether "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202, 121 S.Ct. 2151. If an officer makes a reasonable mistake as to what the law requires, the officer is entitled to immunity. *Id.* at 205, 121 S.Ct. 2151.

### A. *Eighth Amendment Violation*

■ Because Plaintiff was incarcerated at the time of the incident, his excessive force case is governed by the Eighth Amendment's Cruel and Unusual Punishments clause. *Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). In *Whitley*, the Court defined the contours of an inmate's rights under the Eighth Amendment in a factual scenario similar to that presented in this case. There, a correctional officer shot a prisoner in the leg during a prison riot. *Id.* at 316, 106 S.Ct. 1078. In determining whether that conduct amounted to excessive force, the Court paid particular attention to the prison setting and the risks "unrest presents to inmates and prison officials alike, in addition to the possible harms to inmates against whom force might be used." *Id.* at 320, 106 S.Ct. 1078. The Court was also mindful of prison administrators' responsibility to avert those risks and to ensure "the safety of the prison staff, administrative personnel, and visitors, as well as the 'obligation to take

reasonable measures to guarantee the safety of the inmates themselves.'" *Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 525–27, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)).

■ Ultimately, the Court set out a standard for excessive force that would "adequately capture the importance of such competing obligations, or convey the appropriate hesitancy to critique in hindsight decisions necessarily made in haste, under pressure, and frequently without the luxury of a second chance." *Id.* That standard is as follows:

> Where a prison security measure is undertaken to resolve a disturbance ... that indisputably poses significant risks to the safety of inmates and prison staff, we think the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'

*Id.* at 320–21, 106 S.Ct. 1078 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.1973)). In making that determination, the Court set out several factors to be considered, including: (1) the need for the application of force, (2) the relationship between the need and the amount of force that was used, (3) the extent of the injury inflicted, (4) the extent of the threat to the safety of staff and inmates, and (5) any efforts made to temper the severity of a forceful response. *Id.* at 321, 106 S.Ct. 1078.

In this case, Plaintiff alleges Defendant fired his launcher directly at Plaintiff for the purpose of causing harm. In support of this allegation, Plaintiff relies on his own testimony that Defendant pointed the launcher through the fence and fired directly at him from three feet away, thus violating prison regulations that prohibit direct fire on inmate-combatants without

ricocheting the round off the ground. After Defendant fired, Plaintiff contends he felt a wooden block strike him in the leg. Plaintiff claims that before the shooting, Defendant threatened to harm him, which proves Defendant's malicious intent. Plaintiff also contends he suffered a serious injury to his leg that continues to cause him pain and suffering.

■ Although Defendant disputes Plaintiff's allegations, in ruling on the first prong of the qualified immunity analysis the Court must take the facts alleged in the light most favorable to Plaintiff, and determine whether those facts demonstrate the violation of a constitutional right. *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151; *Marquez v. Gutierrez,* 322 F.3d 689, 692 (9th Cir.), *cert. denied,* 540 U.S. 1073, 124 S.Ct. 921, 157 L.Ed.2d 742 (2003). Construed in this light, Defendant maliciously fired a wooden projectile from a 37mm launcher directly at an unarmed inmate involved in a fight with another inmate causing a severe injury to the inmate's leg. No correctional officers, prison personnel or other inmates were at immediate risk during the fight, and Defendant failed to use any lesser degree of force before firing his launcher. On these alleged facts, Plaintiff has shown Defendant violated his Eighth Amendment right to be free from cruel and unusual punishment.

### B. *Clearly Established Right*

■ Having satisfied the first prong of the qualified immunity analysis, the Court must consider whether "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier,* 533 U.S. at 202, 121 S.Ct. 2151. On this issue, the Ninth Circuit's decision in *Marquez* is instructive. In that case, a prison inmate brought an excessive force claim against a correctional officer who shot him in the leg with a Mini–14 rifle during a fight between inmates. 322 F.3d at 691.[1] The plaintiff claimed he was a *passive* bystander to the fight, he was unarmed, as were the inmates involved in the fight, and no one was in danger of great bodily harm. *Id.* at 692. On these alleged facts, the court found the plaintiff had shown an Eighth Amendment violation. *Id.* The court, however, also found the defendant was entitled to qualified immunity.

In reaching this conclusion, the *Marquez* court employed an objective standard and viewed the incident from the perspective of a "reasonable official standing where [defendant] was standing[.]" *Id.*[2] The court stated a reasonable official in that situation "could perceive that both [plaintiff] and another inmate were kicking Perez in the head and threatening Perez with serious injury or death, and that Perez was not capable of protecting himself, even if no kick was actually administered by Marquez." *Id.* at 693. The court held: "In that light, we believe that a reasonable officer could believe that shooting one inmate in the leg to stop an assault that could have seriously injured or killed another inmate was a good faith effort to

---

1. The *Marquez* opinion does not identify the type of firearm used, but defense counsel provided the Court with a copy of the appellant's brief in *Marquez,* which indicates the defendant used a Mini–14 rifle. At oral argument, defense counsel represented that the Mini–14 rifle uses lead bullets, and the briefing in *Marquez* makes clear that the use of *deadly* force was in issue.

2. As instructed by *Marquez,* this Court must approach *Saucier's* second prong from the perspective of a reasonable officer on the scene without regard to the malicious intent ascribed to him by the inmate. *See id.* at 693 ("claim of qualified immunity is not defeated simply because a triable issue of fact exists as to whether [the officer's] decision to shoot [plaintiff] was malicious.")

restore order, and thus lawful." *Id.* (" 'a prison guard is permitted to use deadly force 'in a good faith effort to maintain or restore discipline[.]' ") (citations omitted).

Despite the factual similarities between this case and *Marquez*, Plaintiff argues *Marquez's* holding should not apply to this case. He asserts *Marquez* is distinguishable because there the defendant was standing in a tower 360 feet away from the fighting inmates, whereas in this case, Defendant was standing only a few feet away from the fight. Plaintiff argues a reasonable officer standing 360 feet away from a fight could misperceive who among the inmates was involved in the fight and that one of the inmates was at risk of serious bodily injury or death, but the same cannot be said for an officer standing within feet of a fight. Plaintiff contends a reasonable officer standing a short distance from the fight would know or should have known that neither inmate was at risk of serious bodily injury or death, and therefore, should not have fired a weapon in an effort to stop the fight.

Although an officer's distance from a fight may be a factor in assessing some situations, it is not a factor here. It is undisputed that Defendant Bermudez had a clear view of the inmates.[3] The sole issue therefore remains: would it be clear to a reasonable officer standing in Defendant's position that his conduct was unlawful in the situation he confronted? For several reasons, the Court concludes it would not be clear to a reasonable officer that his conduct was unlawful.

First, a reasonable officer standing in Defendant's position could conclude that one of the inmates involved in the fight was at risk of serious bodily injury. As Defendant's expert stated, inmates may "be killed in a second. One—one rap of the head, one body slam into the wall." (Dep. of Robert Borg at 95:18–20.). Both inmates were fully engaged in a "no-holds-barred" fight, and refusing to comply with orders. A reasonable officer, based on an objective standard, could believe that serious bodily injury was imminent if the fight was not immediately stopped.

Second, Defendant used a baton launcher that fires wooden rounds. Although use of this weapon theoretically may be characterized as lethal force when fired directly at a person, Defendant's expert testified: "I have never known of a case where it was lethal." (*Id.* at 88:10.) Further, when the baton launcher is used in accordance with California Department of Corrections policy (requiring that wooden rounds be fired indirectly, or ricocheted, at inmates), it is considered to be "less lethal" force, not deadly force. (*See* Decl. of William Steven Rigg in Supp. of Pl.'s Opp'n to Mot. for Summ. J., Report at 3.) Moreover, firing this weapon at an inmate's leg, even if done so directly as Plaintiff contends, virtually eliminates the risk that the inmate will suffer a life-threatening or lethal injury. Therefore, labeling the use of force in this case as "lethal," "less-lethal," or "non-lethal" does not assist the qualified immunity analysis. Rather, the actual force used is determinative. Here, it is undisputed Defendant used a baton launcher which expelled a *wooden* round that struck Plaintiff in the *leg*. Defendant did not use a rifle firing lead bullets.

---

**3.** Plaintiff's argument about distance also appears to focus on the reasonableness of the officer's perception of the incident, which is not the proper inquiry for determining the second prong of qualified immunity. That prong is not concerned with the subjective perceptions of the officer and whether those perceptions were reasonable. Rather, it requires the Court to assess the situation from the perspective of a reasonable officer on the scene, and to ask whether "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier,* 533 U.S. at 202, 121 S.Ct. 2151.

Third, the undisputed evidence, as corroborated in part by the videotape, reveals that the fight occurred in a heightened security setting (administrative segregation yard); numerous inmates were present in the yard; the combatants refused to comply with orders to desist; they continued to fight aggressively on the ground, exchanging numerous blows, despite the deployment of several rounds of pepper spray and wooden projectiles; for safety reasons, officers are not allowed in the administrative segregation yard to break up a fight; and officers are directed to stop fights immediately.

Faced with these circumstances—two inmates actively engaged in physical combat that could result in serious injury to either inmate—a reasonable officer could believe that "shooting one inmate in the leg to stop an assault that could have seriously injured ... another inmate was a good faith effort to restore order, and thus lawful." *Marquez,* 322 F.3d at 693. The officer need not wait for serious injury to actually occur; a weapon, such as a shank, to emerge; or chaos in the yard to erupt, through inmates joining the fray or inciting a riot. It would not have been clear to reasonable officer that his conduct was unlawful under these circumstances.[4]

## IV.

### CONCLUSION AND ORDER

For the reasons discussed above, Defendants' motion for summary judgment is **GRANTED**. The Clerk shall enter judgment accordingly.

**IT IS SO ORDERED.**

---

4. Because Defendant is entitled to qualified immunity, the Court does not address Defendant's other arguments that he did not use excessive force, or that Plaintiff has failed to establish causation.