**Roosevelt HAYES, Plaintiff,**

v.

**Sgt. WIMBERLY, Sgt. Densmore, Officer Conner and Officer Moncrief as Individuals and in their Individual Capacities, Defendants.**

**No. LR–C–85–116.**

United States District Court,
E.D. Arkansas,
Pine Bluff Division.

Jan. 15, 1986.

Richard Quiggle, Little Rock, Ark., for plaintiff.

Sandra Johnson Buchanan, Asst. Atty. Gen., Little Rock, Ark., for defendants.

## MEMORANDUM OPINION

HENRY WOODS, District Judge.

### Background

This case is not the last of a long series of cases filed by the plaintiff in the United States District Court for the Eastern District of Arkansas. It is a safe prediction that many more will be filed. Part of plaintiff's life sentence begun in 1977 has been served in Florida under the terms of the Interstate Compact. Although Hayes in his numerous complaints has leveled many broadsides against the Arkansas prison system, it is significant that "Hayes requested to be returned to Arkansas, and this request was granted." *Hayes v. Lockhart, et al,* 754 F.2d 281, 282 (8th Cir.1985). Hayes has been a serious and ongoing disciplinary problem at the Arkansas penitentiary. After he returned from Florida, he was placed in administrative segregation.

"Initially Hayes was assigned to administrative segregation because he was a threat to security and because he was a danger to the other inmates and therefore it appears that the prison officials acted reasonably in placing him in administrative segregation immediately upon his return to Arkansas." *Id.* at 283. The list of the Hayes cases in chronological order is as follows:

1. *Hayes v. Arnt* (PC–C–80–248). Dismissed by Judge Roy on recommendation of Magistrate Henry Jones.

2. *Hayes v. Housewright* (PB–C–81–33). Dismissed by Judge Woods and affirmed by Court of Appeals on June 4, 1982. 685 F.2d 438 (8th Cir.1982).

3. *Hayes v. Lockhart, et al* (PB–C–82–81). Dismissed by Judge Woods, affirmed by Court of Appeals on July 9, 1985, 766 F.2d 1247 (1985).

4. *Hayes v. Lockhart* (PB–C–82–319). Dismissed with prejudice by Judge Roy. Affirmed except as to one issue, on which plaintiff should be permitted to exhaust state remedies, *Hayes v. Lockhart,* 754 F.2d 281 (8th Cir.1985). Remand issue dismissed by Judge Roy on March 14, 1985.

5. *Hayes v. Laveaux* (PB–C–83–250). Dismissed by Judge Woods on August 10, 1983.

6. *Hayes v. Morgan, et al* (PB–C–84–190). Dismissed after trial by Judge Woods on December 14, 1984.

7. *Hayes v. Wimberly, et al* (PB–C–85–116). Tried by Judge Woods on January 6, 1986 (instant case). Judgment of dismissal herewith.

8. *Hayes v. Lockhart, et al* (PB–C–85–164). Dismissed by Judge Overton. Attempted appeal to Court of Apppeals dismissed on June 27, 1985 by Court of Appeals for lack of probable cause.

9. *Arbaugh and Hayes, et al v. Lockhart, et al* (PB–C–85–404). Co-plaintiff with others; pending before Woods.

10. In addition to these cases, there is another of plaintiff's cases that I have not located because it has been shipped to storage at Fort Worth. I do not know the Judge in this case and have not reviewed the file. It is PB-C-80-170, closed on November 24, 1981.

Plaintiff has conducted all of this litigation *in forma pauperis*. He has succeeded in none of these cases. The cost in court time and expense has been considerable both for the judges and their staffs in the Eastern District of Arkansas, as well as for the judges of the Court of Appeals. In the present case brought pursuant to 42 U.S.C. § 1983, the plaintiff claims that he was subjected to cruel and unusual punishment and to unlawful violence contrary to the Eighth and Fourteenth Amendments of the United States Constitution. The Court makes the following findings of fact and conclusions of law.

**Findings of Fact**

1. Serving a life sentence for murder, plaintiff on September 15, 1984 was an inmate at the Cummins Unit of the Arkansas Department of Correction. The details of the murder are set forth in *Hayes v. Lockhart*, 766 F.2d 1247 (8th Cir.1985), a habeas appeal from my court. At the time of the incidents about which he now complains, Hayes was confined in Barracks # 16 in administrative segregation.

2. Sometime prior to midnight on September 15, 1984 another inmate, Pierce Johnson, was brought to Building 16 as a result of an altercation with a prisoner in another barracks. It was first planned to cell him with an inmate Rogers, but a check of the "enemy alert list" showed that there had been previous trouble between them, so it was determined to place him in the cell with an inmate named Walker.

3. Approximately five minutes after Johnson was placed in Walker's cell, a fight broke out between them. Johnson was then removed from Walker's cell and taken to plaintiff's cell, which was the only remaining cell in Building 16 with room for another occupant. Johnson was being escorted by the defendant at this time. When they reached plaintiff's cell, Johnson suggested to plaintiff if he would not take him as a cellmate it would be necessary to return Johnson to his former barracks.

4. Although plaintiff tried to make it appear that his acquaintance with Johnson was slight and casual, I am convinced they were friends. Neither was on the other's "enemy alert list" and the prison officials had no indication there was any bad blood between them. In fact, the prison officials had every reason to believe the contrary. In two of plaintiff's previous cases Johnson had been a principal witness on behalf of Hayes. In *Hayes v. Cowan*, PB-C-80-248, assigned to Judge Roy, plaintiff filed a pleading on March 3, 1983 listing Pierce Johnson as a witness. He would give testimony "as personally witnessing the confiscation of plaintiff's personal property on June 4, 1980 prior to placement on the punitive wing and that his (plaintiff's) property upon release from punitive on June 6, 1980 was not returned." In the same case file there is a long statement by Johnson substantiating the claim of Hayes that he had lost personal property through the fault of prison officials. Not only did Pierce Johnson appear on behalf of Hayes in Judge Roy's case, but he also testified for him in one of the cases heard by me, as he admitted on the stand. These are hardly the actions of an enemy and could scarcely put the defendants on notice that a fight might ensue between Hayes and Johnson.

5. The reticence of Hayes to acknowledge an acquaintanceship with Johnson in the face of their past close relationship lends considerable credence to the state's theory that the opposition to accepting Johnson as a cellmate and their later fracas was an "act" to assist Johnson in returning to the general population barracks. It could well have been repayment for past favors.

6. After Johnson's suggestion, and only thereafter, Hayes took great exception to receiving Johnson as a cellmate. He refused an order to accept handcuffs and

moved to the back of the cell. Hayes then unscrewed and broke a light bulb which he brandished as a weapon. One of the defendants sprayed a short burst of c/s gas into the cell, after which the defendants entered the cell to subdue the plaintiff. Sgt. Wimberly took the lead in this effort and in the process used his baton. I accept Wimberly's testimony that he was mainly striking at plaintiff's arm in order to disarm him. Plaintiff was knocked to the floor by defendant Wimberly and handcuffed by one of the other defendants. The injuries received by plaintiff were minor. He had a cut over his eye and a bruised knee and elbow. The cut over his eye did not require stitches. Plaintiff claimed he was extensively beaten by defendants, but his injuries belie this claim. Sgt. Wimberly in particular is a powerfully built man and in all probability could have inflicted a severe beating on plaintiff if he had so desired. I find that defendants used no more force than was necessary to subdue plaintiff and secure the weapon he had fashioned from the broken light bulb. Such an object was capable of inflicting severe injury on the officers, and Hayes had a well-deserved reputation as one of the worst disciplinary problems in the institution.

7. Plaintiff was taken to the infirmary at 12:45 p.m. on September 16, 1985 and was treated with Tylenol and a prescription for Motrin. He was then returned to his cell.

8. Plaintiff claims that he was attacked by Johnson approximately forty-five minutes after he was returned to his cell. Responding to noise from the cell, the officer found plaintiff on the cell floor. He claimed that he was unable to walk. The only significant additional injuries, however, were some scratches on plaintiff's abdomen. As previously indicated, there is considerable doubt as to whether the fight between Hayes and Johnson was a genuine altercation. If there was an actual fight, I find that plaintiff sustained no significant injuries therein. I further find that in view of the past relationship between these men,

the defendants did not act unreasonably in placing both of them in the same cell.

**Conclusions of Law**

■ 1. Inmates do not have the right to choose their own cellmates, particularly in the administrative segregation barracks. *Cole v. Benson,* 760 F.2d 226 (8th Cir.1985).

■ 2. In *Putman v. Gerloff,* 639 F.2d 415, 420 (8th Cir.1981) the Court of Appeals adopted a widely accepted standard as to the use of force in this type of case, enunciated by Judge Friendly in *Johnson v. Glick,* 481 F.2d 1028 (2d Cir.1973), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973):

> In determining whether the constitutional line has been crossed, a court must look at such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.

*Id.* at 1033, 94 S.Ct. at 462. Tested by this standard, the plaintiff has failed to show that defendants used excessive force in disarming and handcuffing him after he refused to obey their lawful order.

■ 3. Defendants had no knowledge nor were they put on notice that Pierce Johnson might attack plaintiff. There was no indication whatsoever of bad blood between these men. To the contrary, all indications were that these men were friends and prison allies. "Liability exists only if the warden or jailer knew of the risk of such injury or should have known of it and with actual or constructive knowledge, failed to prevent such an attack." *Mosby v. Mabry,* 697 F.2d 213, 215 (8th Cir.1983). An inmate "must show something more than mere inadvertence or negligence. He must show the defendants were deliberately indifferent to his constitutional rights, either because they actually intended to deprive him of some right, or because they acted with reckless disregard of his right to be free from violent attacks by fellow

inmates." *Branchcomb v. Brewer*, 669 F.2d 1297, 1298 (8th Cir.1982).

4. Plaintiff's complaint should be denied and dismissed.