A. Douglas THOMPSON,
Plaintiff, Appellee,

v.

Richard OLSON, Franklin Noiles, and
Stephen Robinson, Defendants,
Appellants.

No. 85–1982.

United States Court of Appeals,
First Circuit.

Argued June 5, 1986.

Decided Aug. 19, 1986.

William J. Kayatta, Jr., with whom Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Portland, Me., was on brief, for defendants, appellants.

Mary B. Devine with whom Robert H. Avaunt and Zuckerman & Avaunt, Gray, Me., were on brief, for plaintiff, appellee.

Before BREYER, Circuit Judge, BROWN,* Senior Circuit Judge, and TORRUELLA, Circuit Judge.

JOHN R. BROWN, Circuit Judge:

In this appeal we must determine whether the District Court erred in holding three police officers liable on a state-based (Maine) claim of false imprisonment on the grounds that they breached a duty to conduct a post-arrest investigation which would have tended to negate their initial finding of probable cause. We must further determine whether the District Court correctly ruled that one of those officers was liable to the plaintiff under § 1983 for conduct which "shocks the conscience" based on the officer's abrupt dismissal of plaintiff's medically based, self-exonerating statements.

We hold that a police officer's initial finding of probable cause justifies not only arrest but a reasonable period of continued detention for the purpose of bringing the arrestee before a magistrate. Once the arrest has been made, it is the *magistrate* and not the policeman who should decide whether probable cause has dissipated to such an extent following arrest that the suspect should be released. Thus, although a police officer certainly has the discretion to release an arrestee immediately in light of certain post-arrest circumstances giving rise to doubts about the initial probable cause finding, we impose no absolute duty to do so absent the post-arrest discovery of evidence negating, beyond any reasonable doubt, the initial probable cause finding—a situation that just did not exist on the facts of this case. Therefore, because there was neither excessive force

* Of the Fifth Circuit, sitting by designation.

used nor an unreasonable delay in bringing the plaintiff to the stationhouse, the District Court erred in holding the officers liable on the state law (Maine) claim of false imprisonment.

We further hold that the District Court erred in holding Officer Robinson liable under § 1983 for conduct which "shocks the conscience." The complained of conduct in this case in no way approaches the level of malevolent conduct required to support a conclusion that it "shocks the conscience." At most, Officer Robinson's curt reply to the plaintiff was evidence of negligence, which does not support an action under § 1983.

The District Court's judgment is reversed and the case is remanded for entry of judgment in favor of the police officers.

### Baleful Bus Ride

Plaintiff-Appellee A. Douglas Thompson is totally blind, the result of a severe form of diabetes. As a result of his special condition, he must carry a number of items when out in public or when traveling. These include a collapsible cane, a bottle of medicine for treating insulin shock, a medic alert necklace, and a diabetic identification card which he carries in his wallet. Thompson wore two artificial glass eyes which, except upon close inspection, concealed his sightlessness.

On December 3, 1980, Thompson was traveling on a Greyhound bus from his parents' home in Machias, Maine to Portland, where he was to catch a plane to his home in Chicago. Although the bus driver who drove the bus from Machias to Bangor knew of Thompson's particular infirmities, the replacement driver who assumed control of the bus in Bangor did not. At some point during the trip from Bangor to Portland, Thompson suffered an insulin shock reaction. When the bus arrived in Portland at 3:00 a.m., Thompson was still in insulin shock.

The driver noticed that Thompson did not get off the bus and asked him whether he wished to disembark in Portland. Thompson responded in the affirmative but made no effort to leave, despite further similar inquiries by the driver. Finally, the driver called the Portland Police, informed them that Thompson refused to get off the bus, and requested their assistance.

Three police officers answered the call, defendants Franklin Noiles, Steven Robinson, and Richard Olson. All three drove to the scene in separate police cruisers. Officer Robinson arrived on the scene first, boarded the bus, and found Thompson slumped in his seat, appearing to be asleep. When Robinson spoke to him and tried to rouse him, Thompson murmured incoherently. Although there was neither an odor of alcohol nor any alcoholic beverage containers present, Robinson assumed that Thompson was drunk. Officers Noiles and Olson arrived shortly thereafter and Robinson informed them about the situation. Olson identified himself as a police officer and told Thompson that he would have to leave the bus. Thompson replied "I will, I will" but still did not move. Olson also believed that Thompson was drunk or under the influence of drugs. Olson reached out and shook Thompson, and Thompson began flailing his arms wildly. At this point, the officers restrained Thompson's arms, moved him to the aisle on his knees, and handcuffed him. The officers tried to stand Thompson up since intoxicated people often revive when stood upright. Thompson, however, collapsed to the floor. The officers then removed Thompson from the bus and placed him in the floor well in the rear of Robinson's cruiser to transport him to the county jail. Officers Olson and Noiles each drove his own cruiser to the jail.

Sometime during the 4–5 minute ride to the county jail, Thompson revived in the back of Robinson's police cruiser. Thompson asked where he was and Robinson told him. Upon Thompson's further inquiries, Robinson told him that he had refused to leave the bus. Thompson then explained that he was a diabetic and that he was probably coming out of insulin shock. Officer Robinson casually dismissed the remark, telling Thompson that diabetics do

not come out of insulin reactions, and the squad car proceeded to the county jail.

Upon arrival at the jail, Thompson refused what he considered insincere offers of assistance, and removed himself from the well of the cruiser with some difficulty. As the officers began walking him to the jail, one of the officers noticed Thompson's Medic-Alert necklace which had come out from beneath his clothes. Thompson heard this officer exclaim, "Hey, he really is a blind diabetic." Thompson testified that everyone's approach improved after the officers discovered the true nature of his problem.

Thompson was asked if he wanted to go to the hospital, but he declined. He then discovered that the bus driver had not given the officers all his luggage, and consequently, he was without some medicine he would need later. Officer Noiles called the Maine Medical Center and inquired as to the best course of action. He was told that the police should retrieve Thompson's medicine from the bus if possible. Officer Noiles called a toll booth to have the bus stopped, traveled down the Maine turnpike, retrieved Thompson's luggage, and returned to the jail.

After discovering the medical reasons underlying Thompson's inability to leave the bus, Officer Olson completed the booking form and indicated that no charges were to be filed. Eventually, Thompson was given a ride to the airport so he could catch his plane to Chicago.[1]

Thompson brought a suit in federal district court against Officers Robinson, Olson, and Noiles in their individual capacity for civil rights violations under § 1983 and for false imprisonment under Maine law. The District Court held all three officers liable for false imprisonment and held Robinson liable also under § 1983. We reverse.

### False Impression or False Imprisonment?

■ Under Maine law, false imprisonment involves the unlawful detention or restraint of an individual against his will. *Nadeau v. State*, 395 A.2d 107, 116 (Me. 1978). To be actionable, the basis upon which a plaintiff is confined must be unlawful, such as where a warrant is defective on its face, or where an officer uses excessive force to arrest, or where an officer unreasonably delays in bringing the arrestee before a magistrate. *Id.*

The District Court correctly found that the officers had probable cause to arrest Thompson when he did not leave the bus. Thus, the officers were not guilty of false arrest. We also agree with the District Court's finding that no excessive force was used against Thompson at any time. Clearly there was no unreasonable delay in taking Thompson to the jail. Furthermore, there is no claim against the officers in their individual capacity for any conduct occurring subsequent to the stationhouse discovery of Thompson's medical situation. Therefore, on these facts, the only time period remaining during which Thompson could possibly have been falsely imprisoned is the short post-arrest detention for the purpose of transporting Thompson to the jail.

According to the District Court, the officers were liable for false imprisonment because the arrest, though validly made, was maintained after it should have become clear that probable cause no longer existed. The District Court found that the officers should have reassessed the situation after removing Thompson from the bus. Because there was neither an odor of alcohol

---

1. Apparently, at some point during his stay at the jail, the jailers—not Noiles, Olson, or Robinson—locked Thompson in a cell for about two hours. This aspect of Thompson's "detention," however, is outside the scope of his claims against Officers Robinson, Olson, and Noiles in their individual capacities and thus not relevant to our review of this appeal.

It is possible that these officers, having mistakenly brought Thompson to the jailhouse, remained under a duty to act reasonably in informing others, such as the jailers, of this plight. We agree, however, that this theory of liability is not now properly before us.

nor any alcohol containers, they should have investigated further. Further investigation, the District Court stated, would have led to the discovery of Thompson's medic alert tags and his reactose. This, in turn, would have destroyed the existence of probable cause and there would have remained no legal authority to detain Thompson.

■ We disagree with the District Court's analysis of the case. First, a police officer's initial finding of probable cause justifies not only arrest, but a reasonable period of continued detention for the purpose of bringing the arrestee before a magistrate. *See Gerstein v. Pugh*, 420 U.S. 103, 113–14, 95 S.Ct. 854, 862–63, 43 L.Ed.2d 54, 65 (1974); *Sanders v. City of Houston*, 543 F.Supp. 694 (S.D.Tex.1982), *aff'd*, 741 F.2d 1379 (5th Cir.1984). Generally, once the arrest has been properly effected, it is the *magistrate* and not the policeman who should decide whether probable cause has dissipated to such an extent following arrest that the suspect should be released. We do not, however, intimate that a police officer, upon an initial finding of probable cause, may close his eyes to all subsequent developments. He may not. Probable cause to arrest does not suspend an officer's continuing obligation to act "reasonably." On the other hand, having once determined that there is probable cause to arrest, an officer should not be required to reassess his probable cause conclusion at every turn, whether faced with the discovery of some new evidence or a suspect's self-exonerating explanation from the back of the squad car. We believe the following standard, articulated in the Restatement of Torts, strikes the proper balance: following a legal warrantless arrest based on probable cause, an affirmative duty to release arises only if the arresting officer ascertains beyond a reasonable doubt that the suspicion (probable cause) which forms the basis for the privilege to arrest is unfounded. Restatement,

Torts, 2d, § 134, Comment f. If the arresting officer does not ascertain beyond reasonable doubt that his suspicions are unfounded, then, having once made a lawful arrest, he may avoid successful claims of false imprisonment by bringing the suspect promptly before a magistrate and by refraining from the use of excessive force.

Although the state of Maine has never ruled upon this specific question, we think the Restatement's rule is in harmony with the current status of Maine's law on false imprisonment. Under Maine law, a claim of false imprisonment may be based on an unreasonable post-arrest delay in bringing the arrestee before a magistrate. *Nadeau v. State*, 395 A.2d 107 (Me.1978). *See also State v. Thurston*, 393 A.2d 1345 (Me.1978) (ruling, in the context of an exclusion of evidence rather than of false imprisonment, that an arrestee should be brought before a magistrate without unnecessary delay).[2] Since police officers are required to bring arrestees before a magistrate without unreasonable delay in order to avoid successful false imprisonment claims, we are reluctant to adopt a rule which subjects them to false imprisonment liability if they fail to conduct a post-arrest investigation—which necessarily involves delay of the sort which inspires false imprisonment claims—at every stage of an arrestee's detention where the officers have some doubt as to their initial assessment of probable cause. Thus, we believe the Restatement rule strikes the proper balance as it prevents an officer from closing his eyes to all post-arrest developments without requiring him to reassess his initial probable cause finding at every turn.

*Drunk, Drugs, or Diabetes?*

In the present case, Officers Noiles, Robinson, and Olson had probable cause to arrest Thompson, as the District Court correctly found. The officers believed Thompson to be drunk or on drugs. Medical testimony in the record indicates that insu-

---

**2.** In fact, Thompson's claim is unusual precisely because arrestees usually claim that there was too long of a delay in bringing them before a magistrate, not that they were brought in too soon.

lin shock often masquerades as drunkenness. Even Thompson's diabetic identification card—which was kept in his wallet out of view of the officers—contained the inscription, "I am a Diabetic, I am not drunk." Yet, the officers' mere belief that Thompson was drunk gave them, at best, dubious authority to go rummaging through his wallet. Moreover, Thompson's medic alert necklace was concealed beneath layers of winter clothing, including a parka. Neither the bus driver nor anyone else on the bus volunteered any information which would lead a reasonable officer to suspect that Thompson's problems were medically based rather than drug or alcohol induced. Thompson himself was innocently incoherent. The absence of alcohol containers and the apparent lack of any odor of alcohol is not inconsistent with the officer's suspicion that Thompson may have been in a drug induced stupor. In short, from the time of arrest until Thompson was removed from the bus and placed in the squad car, nothing came to the officers' attention which cast doubt on their initial conclusion that they had probable cause to arrest. It was not until Thompson revived in the back of Officer Robinson's squad car that any evidence came to light which should have caused the officers to doubt their original assessment of probable cause. At that time, Officer Robinson was the only officer present—so whatever transpired in the squad car in no way supports the false imprisonment claims against Noiles and Olson. And even with respect to Officer Robinson, the self-exonerating statements offered by Thompson were not, in and of themselves, so sufficient that Robinson should have ascertained beyond a reasonable doubt that the initial determination of probable cause was unfounded. In fact, the record shows that Robinson did not believe Thompson's claims that he was coming out of insulin shock. Police officers hear many self-exonerating claims from suspects and should not be required to give significant weight to these statements in post-arrest determinations of whether probable cause has dissipated to such an extent that the suspect should be released.[3] Even if Robinson had believed Thompson, it would not have been unreasonable under these circumstances—3 a.m. in the middle of winter only a few minutes from the stationhouse—to continue to the stationhouse and determine there the truthfulness of the suspect's statements.

The preceding analysis does not end our inquiry in light of the District Court's heavy reliance on the officers' duty to conduct a post-arrest investigation. According to the District Court, it is this investigation which, if conducted by the officers, would have conclusively demonstrated the illegality of any further detention of Thompson. We recognize that there may be situations which warrant a post-arrest investigation to reassess the initial probable cause determination—even before policemen perform their obligatory duty, under threat of false imprisonment liability, to bring the arrestee promptly before a magistrate. However, we leave for another day the question of when such a post-arrest duty arises and how much investigation is necessary to meet that duty. We decide only that, on the facts of this case, there arose no affirmative duty to conduct a post-arrest investigation for the purpose of reassessing the initial probable cause determination which justified Thompson's arrest. Just as nothing came to the officers' attention to cast serious doubt on their initial assessment of probable cause, neither did anything come to their attention which should have put on them a duty to make a further investigation into probable cause. All three officers were reasonable in their continued belief that Thompson was under the

---

**3.** It is true that Thompson's statements—that he was a diabetic coming out of insulin shock—were of a different variety, and veracity, than those usually uttered by an arrestee. Perhaps Thompson's statements should not have been summarily disregarded precisely because they were some indication of a potential medical crisis. However, we are not reviewing a claim of refusal of medical assistance; we are reviewing a claim of false imprisonment, and for false imprisonment purposes, the medical nature of Thompson's squad car semantics is largely irrelevant, given that Officer Robinson did not believe him.

influence of drugs or alcohol. At most, Thompson's back-of-the-squad-car statements should have perhaps flickered a light bulb inside of Officer Robinson's head. Yet, at that point—3 a.m. in the middle of winter less than three minutes from the station—it would certainly have been reasonable to investigate Thompson's claim at the stationhouse.[4]

In sum, we hold that the District Court erred in holding the three police officers liable for false imprisonment on the facts of this case.

### Shock(ing) Treatment?

■ The District Court also held Officer Robinson liable under § 1983 for his abrupt dismissal of Thompson's back-of-the-squad-car explanation. According to the District Court, this is an example of police conduct which "shocks the conscience" and therefore constitutes a substantive due process violation of the type envisioned by *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952), and *Johnson v. Glick*, 481 F.2d 1028 (2d Cir.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). *See also Schiller v. Strangis*, 540 F.Supp. 605 (D.Mass.1982) (cited by the District Court in support of its conclusion).

We hold that Officer Robinson's reply to Thompson, although incorrect in its assumptions about insulin shock, falls far short of the malicious police conduct involved in *Rochin, Johnson*, and *Schiller*. In *Rochin*, the police officers took a suspect against his will to a hospital and had his stomach pumped in a search for narcotics evidence apparently swallowed by the suspect during the arrest. 342 U.S. at 166, 72 S.Ct. at 206, 96 L.Ed. at 187. In *Johnson*, a policeman intentionally assaulted a pretrial detainee, striking him twice in the head and threatening to kill him. 481 F.2d at 1029–30. In *Schiller*, the plaintiff was a victim of an unlawful arrest, an unlawful entry into his home, numerous unlawful searches, and a short beating with a flash-

light after he had already been handcuffed. 504 F.Supp. at 609, 617.

Officer Robinson's complained of conduct, in contrast to the examples in *Rochin, Johnson*, and *Schiller*, involved absolutely no use of force and was completely devoid of any acts which could even remotely be described as malicious. Officer Robinson merely discredited Thompson's back-of-the-squad-car statements. At most, because of the medical nature of Thompson's statements, Robinson's abrupt dismissal of their validity may rise to the level of negligence. However, we have found no case in which negligent conduct has been held to constitute a due process violation of the type described in *Rochin* and *Johnson*. The Sixth Circuit recently refused to find a *Rochin*-type violation in a case involving negligence far more harmful than the negligence, if any, involved here. *See Wilson v. Beebe*, 770 F.2d 578 (6th Cir.1985) (police officer negligently shot arrestee while handcuffing him). Moreover, the Supreme Court has recently held that mere negligence does not trigger the protections of the Due Process Clause. *Daniels v. Williams*, 474 U.S. ——, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Davidson v. Cannon*, 474 U.S. ——, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986).

Officer Robinson's conduct is not at all similar to that found sufficient for imposing § 1983 liability in, for example, *Shillingford v. Holmes*, 634 F.2d 263 (5th Cir. 1981). In that case, the Fifth Circuit recognized that not every personal hurt by a state officer constitutes a violation of the fourteenth amendment. Some state-inflicted injury is so minor as to occasion only a tort claim, not a constitutional invasion. *Id.* Thus, the Fifth Circuit said in *Shillingford*:

> In determining whether the state officer has crossed the constitutional line that would make the physical abuse actionable under Section 1983, we must inquire into the amount of force used in relation-

---

4. As it was, Thompson's claim was substantiated shortly after he got out of the squad car at the stationhouse, even before he entered the build-

ing. Thus, Thompson's true condition was discovered earlier than a stationhouse investigation would have revealed.

ship to the need presented, the extent of the injury inflicted and the motives of the state officer. If the state officer's action caused severe injuries, was grossly disproportionate to the need for action under the circumstances and was inspired by malice rather than merely careless or unwise excess of zeal so that it amounted to an abuse of official power that shocks the conscience, it should be redressed under Section 1983.

*Id.* at 265, *citing Johnson v. Glick*, 481 F.2d at 1033.

In *Shillingford*, the police were apprehending a Mardi Gras reveler when a bystanding tourist attempted to photograph the incident. The tourist was not involved in the arrest incident and did not interfere with the police in any way. One of the policemen, Holmes, intentionally struck the tourist's camera with his nightstick, destroying the camera and smashing it into the tourist's face and lacerating his forehead. 634 F.2d at 264. On these facts, the Court held that there was a deprivation of the tourist's constitutional rights which supported a § 1983 action.

Again, Officer Robinson's conduct in the present case—even if it could somehow be viewed as more than negligence—in no way approaches the level of misconduct by the officer in *Shillingford*. Officer Robinson's disregard of Thompson's statements simply did not cross the constitutional line drawn in *Johnson* and *Shillingford*. The claim against Robinson is just not actionable under § 1983.

In a nutshell, we hold that the District Court erred in holding Officers Noiles, Olson, and Robinson liable for false imprisonment, and in holding Officer Robinson liable under § 1983.

REVERSED.