Ronald **FONTE**, Plaintiff,

v.

John **COLLINS**, et al., Defendants.

Civ. No. 88–0267–P.

United States District Court,
D. Maine.

May 16, 1989.

**512**

Murrough H. O'Brien, Portland, Me., for plaintiff.

William J. Kayatta, Jr. and Pierce Atwood · Scribner, Portland, Me., for defendants.

MEMORANDUM OF DECISION AND ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND REMANDING THE REMAINING ISSUES TO THE STATE COURT FOR FURTHER PROCEEDINGS

GENE CARTER, District Judge.

## I. INTRODUCTION

The Court now considers Defendants' Motion for Summary Judgment, filed on March 17, 1989. Defendants, members of the Portland Police Department, bring this motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, claiming that there are no material issues of fact and that Defendants are entitled to judgment as a matter of law. Plaintiff's Complaint states four causes of action, three of which are based in state common law, with the fourth stating a violation of 42 U.S.C. section 1983. Plaintiff claims federal question jurisdiction under 28 U.S.C. section 1331, with *pendent* jurisdiction over the state claims.

For the reasons set out herein, the Court grants summary judgment for Defendant on Plaintiff's section 1983 claim. In the resulting absence of a federal claim, Plaintiff's basis for federal jurisdiction under 28 U.S.C. section 1331 fails. Accordingly, in the exercise of its discretion, the Court finds that it is without jurisdiction to hear the remaining state law claims, and remands these claims to the state courts for further proceedings.

## II. FACTUAL BACKGROUND

The following facts are undisputed except as specifically indicated. On May 17, 1979, a decree was issued in the Cumberland County, Maine, District Court granting a divorce to Plaintiff Ronald Fonte and Irene Taylor Fonte, now Irene Ashjean. Ashjean was granted sole custody of their daughter, Adriene. Plaintiff was granted visitation rights at all reasonable and proper times. In recent years since the divorce, Adriene has lived with Ashjean in Lainsdown, Pennsylvania.

In 1986, Adriene, then ten years old, came to spend the summer with Plaintiff at his home on Long Island in Casco Bay. On or about August 14, 1986, Ashjean placed a telephone call from her Pennsylvania home to Plaintiff's home on Long Island and spoke with both former husband Plaintiff and daughter Adriene. The substance of these conversations is disputed. Defendant claims that Plaintiff told Ashjean that he did not plan to return Adriene to Ashjean at the end of the visitation period. Plaintiff claims that Adriene herself told

Ashjean that she did not wish to return to Pennsylvania.

On August 16, 1986, Ashjean arrived in Portland after driving by car from her Pennsylvania home. Ashjean went directly to the Portland Police Department to request assistance in securing possession of Adriene. Defendants claim that Ashjean produced a certified copy of the divorce decree granting her sole custody of Adriene. Defendants also claim that Ashjean told Defendant Lieutenant Edward Guevin that Plaintiff threatened not to return Adriene, and that Plaintiff's previous behavior gave Ashjean reason to believe Plaintiff would carry out his threat. Plaintiff claims that the visitation period he had arranged with Ashjean for Adriene to stay in Maine was not to expire until August 23, 1989, and that Ashjean failed to relate this information to Defendant Guevin. Plaintiff claims that Ashjean's anxiety was caused by her conversation with Adriene, in which Adriene allegedly expressed reluctance to return to Pennsylvania, and that Plaintiff made no threats to keep Adriene with him past the August 23 return date upon which they had allegedly agreed.

In response to Ashjean's report, Defendant Guevin dispatched Defendants Sergeant John Collins and Officers Joseph Fagone and Steven Reece to accompany Ashjean to Long Island. Defendants claim they were sent to investigate whether Plaintiff was planning to hide Adriene from her custodial parent, and to check on Adriene's welfare. Plaintiff claims that Defendants were dispatched to retrieve Adriene and return her to her mother's custody.

Ashjean accompanied Defendants Collins, Fagone and Reece by police boat from Portland to Long Island, where they searched without success for Plaintiff and Adriene. On the return trip to Portland, Ashjean spotted Plaintiff's boat motoring toward Long Island.

From this point on, the facts are in dispute. Defendants claim that they activated the police siren and blue lights and pursued Plaintiff. Defendants allegedly had to give chase for three to four minutes, after which time Plaintiff stopped his boat and permitted Defendants to close the distance sufficiently to communicate with Plaintiff. Plaintiff claims simply that he stopped his boat as soon as he saw the police boat giving chase, and permitted Defendants to approach within communication distance. The boats were stopped in Hussey Sound, just off Long Island, where Defendants claim the swells were four to six feet. Plaintiff claims the swells were three to four feet.

Defendants claim at that point they communicated their desire to speak with Plaintiff and Adriene about Ashjean's custody concerns. Plaintiff claims that Defendants told him that they had a court order to pick up Adriene. Plaintiff offered to allow Defendants to transfer Adriene to their vessel, which Defendants allege they refused because of a perceived risk to Adriene in performing such an over-the-water exchange. It is undisputed that Adriene was not wearing a life preserver, but Plaintiff claims there were life preservers on board his vessel and that Adriene is an excellent swimmer.

Defendants ordered Plaintiff to proceed to the landing at Long Island. Defendants claim that Plaintiff "sped away" toward the landing, ahead of the police boat. Plaintiff agrees that he arrived ahead of the police boat but denies that he "sped away." He claims that no order was given to follow or accompany the police boat to the landing.

When Plaintiff's boat arrived at the landing, Adriene alighted from the vessel, onto the dock, and ran up the gangway onto the island. When the police boat arrived a few minutes later, Defendant Reece and Ashjean went ashore to find Adriene. Defendants claim that Defendant Reece and Ashjean found Adriene in a house on the island, sitting on a couch with four unidentified adult males. Defendants claim that Adriene told Defendant Reece and Ashjean that Plaintiff had instructed her to go there.

Defendants Fagone and Collins handcuffed Plaintiff and placed him under arrest. Plaintiff claims that Defendant Col-

**514**

lins produced a piece of paper and stated that he had a court order to take possession of the child, and that Collins yelled at him for two minutes, calling him, among other things, a "terrible father." Defendants placed Plaintiff in the bow of the police boat and transported him to Portland. Defendant was charged with obstruction of government administration. That charge was dropped several months later.

On August 11, 1988, Plaintiff filed this action in the Superior Court in and for the County of Cumberland and State of Maine. Plaintiff's complaint names as Defendants Lieutenant Collins, Sergeant Guevin and Officers Fagone and Reece, and states four counts: Count I, violation of 42 U.S.C. section 1983; Count II, common law tortious assault; Count III, false imprisonment; and Count IV, malicious prosecution. Defendants petitioned for removal to this Court on September 22, 1988.

### III. ANALYSIS
### 42 U.S.C. § 1983

■ Count I of Plaintiff's complaint states:

By their actions ... in arresting the Plaintiff without legal cause, in imprisoning or causing him to be imprisoned, in swearing out a judicial criminal complaint against him, and in interfering with and obstructing the divorce judgment of the Maine District Court, the Defendants violated the Plaintiff's federal constitutional rights as guaranteed to him under 42 U.S.C. Section 1983 ... Such conduct was willful, intentional reckless or grossly negligent.

Defendants move for summary judgment on this Count on the basis that Defendants are protected by qualified immunity from liability under section 1983.

In an action asserting liability under section 1983, the rule of qualified immunity shields government officials performing discretionary functions from personal liability for civil damages when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). *Harlow* establishes the standard as one of "objective reasonableness," and eliminates from consideration allegations about the official's subjective state of mind. *Floyd v. Farrell*, 765 F.2d 1, 4 (1st Cir.1985). An officer's qualified immunity is pierced only if there clearly was no probable cause at the time the arrest was made. *Id.* at 5.

According to this objective test, the question the Court must ask here is whether another officer, standing in Defendants' shoes and having the same information Defendants had, would reasonably have come to the conclusion that there was probable cause to arrest Plaintiff for obstruction of government administration. *Id.* 17–A M.R.S.A. section 751 says

[a] person is guilty of obstructing government administration if he uses force, violence, intimidation or engages in any criminal act with the intent to interfere with a public servant performing or purporting to perform an official function.

The Court has reviewed the elements required under section 751 to find a defendant guilty of obstructing government administration, and has determined that the elements required of a section 751 violation are lacking on the present record.

There is no question that the Defendant police officials were performing or purporting to perform an official function. 17–A M.R.S.A. section 303(3) gives police officers the right to take physical custody of a child "whom the officer reasonably believes has been taken, retained or enticed in violation of [section 303], and for delivering the child to a person whom he reasonably believes is the child's lawful custodian or to any other suitable person." Thus, the investigation into Adriene's whereabouts, safety, and physical condition were part of an official function.

Even absent an actual official function being performed by the police, section 751 makes illegal the interference with a public servant *purporting to perform* an official function. What is material here is that

Defendants purported to perform an official act in first investigating the condition, and subsequently securing possession, of a child subject to a custody dispute between her divorced parents. Whether or not Defendants were *actually* engaged in a lawful, official act is immaterial. *See State v. Judkins*, 440 A.2d 355, 359 (Me.1982).

Under section 751, however, in order to be guilty of obstruction of government administration, Plaintiff must have used (a) force, (b) violence, (c) intimidation, or (d) have engaged in a criminal act with the intent to interfere with the officers' investigation. 17–A M.R.S.A. § 751. In their Statement of Material Facts in support of their motion for summary judgment, Defendants expressly state the basis for arresting Plaintiff on the charge of obstructing government administration. Paragraph 18 states:

Sergeant Collins did not decide to arrest [Plaintiff] until he observed [Plaintiff] insist on an over-water exchange of a life preserverless nine-year old in rough seas, allow Adriene to run away before the officers had a chance to talk with her, and learned that Officer Reece found her at a house where she said her father told her to go. Sergeant Collins concluded that:

a. Fonte knew the officers wished to speak with the girl;

b. he did not want the officers to do so;

c. he exercised his physical and psycological [sic] control over Adriene so as to prevent the officers from performing their duties. In particular:

(i) he attemped [sic] to intimidate the officers and Mrs. Ashjean by insisting that the interview of Adriene be done through a dangerous over-water exchange;

(ii) he sped away from the police boat and docked at the landing well in front of the police boat; and

(iii) he caused Adriene to run away before the officers reached the landing and hide on the Island.

This explanation by Defendants of the reasoning behind the decision to arrest Plaintiff does not satisfy the section 751 requirements for a finding of obstructing government administration.

Defendants have not established Plaintiff's use of force, violence, or intimidation with the intent to interfere with Defendants' performance of their official duties. The factors stated as the bases for the decision to arrest Plaintiff do not indicate, nor have Defendants argued, that Plaintiff used force or violence. Nor is there merit to Defendant's suggestion that Plaintiff's offer to pass the child from his boat to Defendants' boat in an over-water exchange could reasonably be viewed as intimidation. Defendants pulled alongside Plaintiff's vessel and expressed a desire to speak with Plaintiff and Adriene about Ashjean's allegations concerning custody of the child. Plaintiff immediately offered to pass custody of the child to the authorities. The Court does not agree, as Defendants suggest, that a reasonable person could view Plaintiff's actions as trying to intimidate the authorities into choosing between abandoning their inquiry and placing Adriene in danger.

Nor does the Court accept Defendants' argument that they had probable cause to believe Plaintiff was committing a criminal act in order to interfere with their investigation. Specifically, Defendants claim that Plaintiff's conduct, in the encounter that began at sea and ended on the Long Island dock, constituted criminal restraint by a parent, in violation of 17–A M.R.S.A. section 303(1)(A). Section 303 provides in pertinent part:

1. A person is guilty of criminal restraint by parent if, being the parent of a child under the age of 16, and knowing he has no legal right to do so, he:

A. Takes, retains, or entices the child from the custody of his other parent, guardian, or other lawful custodian with the intent to remove the child from the State or to secret him and hold him in a place where he is not likely to be found....

17–A M.R.S.A. § 303. Defendants argue that it was reasonable for them to believe that Plaintiff had violated section 303(1)(A), thereby "engaging in a criminal act" as

this term is used in the section 751 description of obstructing government administration.

The Court rejects this argument. In order for Defendants' argument to succeed, it must have been objectively reasonable for Defendants to believe Plaintiff was committing a violation of section 303(1)(A) *with the intent to interfere with Defendants' official investigation.* 17–A M.R.S.A. § 751. Accepting Defendants' argument would require a finding that the alleged criminal act being investigated may also serve as the criminal act for purposes of an obstruction charge under section 751. This circular logic is without merit. Here, Defendants were investigating a charge that Plaintiff was planning to hide Adriene from her mother, the custodial parent. Considering objectively the facts as Defendants saw them, no reasonable person could believe that Plaintiff's continuing violation of section 303 was directed at interfering with the police investigation. Even assuming the facts as Defendants state them, Plaintiff's actions look like a continuing effort to deny custody to the mother, and not a specific attempt to frustrate the investigation itself. In other words, a reasonable person in Defendants' shoes would see Plaintiff's conduct as a continuation of the alleged criminal violation under investigation, and not an "intent to interfere with a public servant performing or purporting to perform an official function." 17–A M.R.S.A. § 751.

The Court acknowledges that Plaintiff may very well have obstructed, in the general sense of the word, Defendants' efforts in looking into Adriene's custody and welfare. Under the specific terms of the Maine statute defining the violation for which Plaintiff was arrested, however, no reasonable person could have found force, violation, intimidation or a criminal act in Plaintiff's actions intended to obstruct government administration. 17–A M.R.S.A. § 751. Accordingly, under the objective test established in *Harlow v. Fitzgerald,*

Defendants may not avail themselves of qualified immunity from liability under 42 U.S.C. § 1983.

■ The Court's determination that Defendants are not protected by qualified immunity does not complete inquiry into the viability of Plaintiff's section 1983 claim for summary judgment purposes. Qualified immunity is an affirmative defense that does not address the substantive viability of Plaintiff's section 1983 claim. *See Davidson v. Scully,* 694 F.2d 50 (2d Cir. 1982). In claiming that his federal constitutional rights were violated, Plaintiff states in Count I of his Complaint that Defendants' conduct was "willful, intentional, reckless or grossly negligent." Even accepting this characterization as accurate, Plaintiff has neither claimed in his complaint, nor alleged facts to suggest, that Defendants' conduct rises to the heightened level required of a federal constitutional tort.

It is well established that not every tort under state law becomes a federal constitutional tort simply because it is committed by a state official under color of state law. *Schiller v. Strangis,* 540 F.Supp. 605 (D.Mass.1982); *see Estelle v. Gamble,* 429 U.S. 97, 105–06, 97 S.Ct. 285, 291–92, 50 L.Ed.2d 251 (1976). To establish that a state official's conduct constitutes an invasion of substantive due process rights, the plaintiff must show that the conduct "shocks the conscience." *Rochin v. California,* 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952); *Thompson v. Olson,* 798 F.2d 552 (1st Cir.1986). Plaintiff's charge of willful, intentional, reckless, or gross negligence on the part of Defendants does not definitively address the heightened "shocking-to-the-conscience" standard applicable to his section 1983 claim.

Furthermore, the material, undisputed facts here neither shock this Court's conscience nor approach the level of conduct found to constitute a section 1983 violation in other courts.[1] As the Court of Appeals

---

**1.** The only aspect of Defendants' allegations as to the facts of the encounter between the officers and Plaintiff that may be viewed as offensive conduct by the officers are his assertions

that Defendant Collins spoke loudly to him, stating that he was a bad father, and displayed a piece of paper which he represented gave the officers authority to take possession of the

for the Fifth Circuit stated in *Shillingford v. Holmes,* 634 F.2d 263, 265 (5th Cir.1981), *citing Johnson v. Glick,* 481 F.2d 1028 (2d Cir.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973):

In determining whether the state officer has crossed the constitutional line that would make the physical abuse actionable under Section 1983, we must inquire into the amount of force used in relationship to the need presented, the extent of the injury inflicted and the motives of the state officer. If the state officer's action caused severe injuries, was grossly disproportionate to the need for action under the circumstances and was inspired by malice rather than merely careless or unwise excess of zeal so that it amounted to an abuse of official power that shocks the conscience, it should be redressed under Section 1983.

child. *See supra.* The implication is that the latter assertion was false. If it be conceded that Plaintiff's factual assertions in these respects are true, it could be argued that they create a genuine issue of material fact as to whether the offensive conduct rendered the officers' actions shocking to the conscience. The Court is satisfied, on close examination of the facts, that such is not the case.

Assuming that Plaintiff's assertions are true, the officers could reasonably believe: (1) that Plaintiff was aware that they were investigating, at the mother's request, the circumstances of his possession of the child; (2) that their efforts in that respect were legitimate exercises of their police authority; (3) that Plaintiff was being uncooperative with their efforts to carry out their investigation; (4) that Plaintiff was prepared to place the child's well-being in jeopardy in the circumstances; (5) that Plaintiff attempted to place the child beyond their reach once he had arrived at the dock; and (6) that Plaintiff did not place appropriate weight on the interests of the child in his efforts to hamper the investigation. It is objectively reasonable that a prudent officer might become frustrated, even angry, with Plaintiff for his conduct, so perceived, speak loudly to him and chastise him for lack of proper parental concern for the child. Such conduct, under the circumstances, is not "shocking to the conscience."

With respect to the allegation that Defendant Collins represented that a displayed piece of paper gave the officers authority to take possession of the child, Plaintiff's submissions in support of his objection to the motion for summary judgment fail to make a showing of evidentiary quality that the representation was false. The

In *Rochin v. California,* 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952), police officers took plaintiff, a suspect in a narcotics case, to a hospital to have his stomach pumped in a search for evidence he may have swallowed just prior to arrest. In *Johnson v. Glick,* 481 F.2d 1028, a police officer intentionally struck a pretrial detainee in the head twice and threatened to kill him. In *Schiller v. Strangis,* 540 F.Supp. 605 (D.Mass.1982), plaintiff suffered an unlawful arrest, unlawful entry and searches of his home, and a beating with a flashlight while handcuffed. In each case, the police conduct, far exceeding the levels of state-law tort, was found to be shocking to the conscience and therefore an unconstitutional violation of section 1983.

In contrast, the Court of Appeals for the First Circuit found no such constitutional invasion in *Thompson v. Olson,* 798 F.2d 552 (1st Cir.1986). In *Thompson,* a blind record shows that Ashjean provided the officers with a valid Maine court decree giving her lawful custody of Adriene. Although Plaintiff asserts he had the child under an agreement with Ashjean allowing his custody until August 23, 1986, he himself asserts that Ashjean did not tell Defendants about the arrangement, nor is it anywhere asserted by Plaintiff that the custodial agreement had been approved by any Maine court. In the absence of such approval, and knowledge of it on the part of Defendants, Defendants were reasonably entitled to believe that the court order, provided to Defendants by Ashjean, granting custody of Adriene to Ashjean was a valid court order authorizing them to take the child into custody at Ashjean's request for purposes of restoring possession to her. In the absence of any indication on the record that the "piece of paper" displayed by Defendant Collins was anything other than the decree provided to the officers by Ashjean, there is no basis to believe it was anything other than that decree.

There is, therefore, no support on the record for the implication that the representation by Defendant Collins was a false one. Absent its falsity, the representation cannot be said to "shock the conscience."

Defendants have alleged, and it is not disputed, that they were acting under the authority of a decree giving Ashjean the right to custody of the child which is, unless controverted, a sufficient basis for their investigation of the circumstances of Plaintiff's possession of the child. Plaintiff has failed to support by any submission of evidentiary quality his implied allegation that Defendant's belief in the validity of the decree, or Defendant Collins' representation of it, was false. There is, therefore, no genuine issue of material fact in these respects.

diabetic was arrested on a Greyhound bus in Portland, Maine, after police mistook an insulin shock reaction for intoxication. Portland police breezily dismissed plaintiff's explanation that he was a diabetic suffering from insulin shock, and took plaintiff to the county jail. At the jail, the police discovered plaintiff's true condition, and assisted in securing his medication and continued travel. *Id.* at 554–55. Reversing the decision of this Court, the Court of Appeals noted that the police conduct involved absolutely no use of force and was completely devoid of any acts which could be described as malicious. *Id.* at 558. While not discounting the possibility that the police conduct could be characterized as negligent, the Court of Appeals stated that "we have found no case in which negligent conduct has been held to constitute a due process violation of the type described in *Rochin* and *Johnson.*" *Id.*

Here, neither Plaintiff's complaint nor the undisputed facts presented to the Court indicate any form of physical abuse, let alone to the extent present in the cases cited above where section 1983 violations were found. Nor is there any indication of maliciousness in Defendants' conduct that can reasonably be considered shocking to the conscience. The Court has determined that Defendants lacked probable cause for the arrest on obstruction charges. However, the circumstances of the unlawful arrest and the basis of the officers' actions in effecting the arrest do not make the unlawful character of the arrest by itself conduct which "shocks the conscience," and thus, the arrest alone does not confer a constitutionally-based right of action upon Plaintiff. Absent other factors, apart from the arrest itself, indicating police action grossly disproportionate to the circumstances, such that would shock the conscience, *see Johnson v. Glick,* 481 F.2d at 1033, Plaintiff's claim at best amounts to "a bare case of unprivileged interference with interests protected under state law." *Schiller v. Strangis,* 540 F.Supp. at 617.

The Court finds no material issue of fact concerning Plaintiff's section 1983 claim, and Defendants are entitled to judgment as a matter of law on this issue. Accordingly,

it is *ORDERED* that Defendant's Motion for Summary Judgment is *GRANTED* as to Count I of the Complaint. It is further *ORDERED* that the remaining Counts in the complaint, alleging state law causes of action, as to which there is no showing of any independent basis for federal jurisdiction, are *REMANDED* to the state court for further proceedings.