Kevin D. WATSON, Plaintiff,

v.

**B. RIGGLE, et al., Defendants.**

**No. 3:02 CV 0871 AS.**

United States District Court,
N.D. Indiana,
South Bend Division.

April 21, 2004.

Kevin Watson, Bunker Hill, IN, pro se.

Margaret D. Wielenberg, Indianapolis, IN, Thomas M. Dixon, South Bend, IN, for Defendant/Respondent.

## MEMORANDUM AND ORDER

ALLEN SHARP, District Judge.

Petitioner Kevin D. Watson ("Watson"), an inmate at the Miami Correctional Facility ("MCF") in Bunker Hill, Indiana, comes before this Court proceeding *pro se* and purporting to state a claim under 42 U.S.C. § 1983. Watson's complaint, filed on December 4, 2002, claimed that the Defendants collectively contributed to the exertion of excessive force during the removal of his handcuffs on December 8, 2001 while Watson was incarcerated at

MCF. The federal question subject matter jurisdiction of this Court was invoked under 28 U.S.C. §§ 1331 and 1343(3). This Court set the discovery deadline for October 1, 2003 in an order on June 17, 2003. On December 8, 2003 Defendants, by and though their counsel, entered a motion and memorandum for summary judgment. The motion and memorandum showed compliance with the necessary mandates of *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir. 1982). Watson filed a response in opposition to defendant's motion for summary judgment on April 14, 004.

## I. BACKGROUND

Watson's complaint arises out of an incident occurring on December 8, 2001. The Defendants named in Watson complaint are Officer Riggle, Officer Hall, and Officer Williams, all whom were employed as correctional officers at MFC and were on duty the day of the alleged injury. On that day Officers Riggle and Hall returned a handcuffed Watson, to his cell following a routine search of the same cell. According to Officer Riggle's report, upon returning Watson to his cell, Watson refused to allow his handcuffs to be removed. Due to Watson's refusal, Officer Riggle and Officer Hall "...secured the offender's wrists by physically pulling them though the cuff port of the cell after the cell door had been shut." Officers Riggle and Hall held the wrists in this position while Officer Williams removed Watson's handcuffs. All three officers contend that Watson continuously resisted the removal of the cuffs and was generally argumentative and uncooperative during the entire incident. In his complaint, Watson alleges that as a result of this encounter he suffered physical injury to his arms and wrists. Watson filed a "request for health care" on December 8th and was examined by a physician on December 11th, 2001. The examination report reveals that Watson has a cut on his left hand and swelling in his left wrist. The physician noted that the wrist maintained good range of motion. No medication was prescribe nor further medical attention rendered.

## II. STANDARD OF REVIEW

Summary judgment is proper if the pleadings, dispositions, answers to interrogatories and admissions on file, together with any affidavits, show that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56; *Bragg v. Navistar Int'l Trans. Corp.*, 164 F.3d 373 (7th Cir.1998). A thorough discussion of Rule 56 can be found in a trilogy of cases decided in 1986 by the Supreme Court of the United States.[1] See *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). *Celotex* addressed the initial burdens of the parties under Rule 56 and *Anderson* addressed the standards under which the record is to be analyzed within the structure of Rule 56.

1. The 1986 Supreme Court trilogy was lager re-examined in *Eastman Kodak v. Image Technical Servs.*, 504 U.S. 451, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992), a case born in the context of antitrust law. The most that can be said for *Eastman Kodak*, however, is that it did not tinker with *Celotex* and *Anderson*, and possibly involves an attempt to clarify *Matsushita*. This view is well supported by an in-depth academic analysis in Schwarzer, Hirsch, and Barrans, *The Analysis and Decision of Summary Judgment Motions*, 139 F.R.D. 441 (1992).

The initial burden is on the moving party to demonstrate, "with or without supporting affidavits," the absence of a genuine issue of material fact and that judgment as a matter of law should be granted in the moving party's favor. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 56); *Larimer v. Dayton Hudson Corp.,* 137 F.3d 497 (7th Cir.1998). A question of material fact is a question which will be outcome determinative of an issue in the case. The Supreme Court has instructed that the facts material in a specific case shall be determined by the substantive law controlling the given case or issue. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Once the moving party has met the initial burden, the opposing party must "go beyond the pleadings" and "designate 'specific facts' showing that there is a genuine (material) issue for trial.'" *Id.* The nonmoving party cannot rest on its pleadings, *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 920–21 (7th Cir.1994); *Hughes v. Joliet Correctional Ctr.,* 931 F.2d 425, 428 (7th Cir.1991), nor may that party rely upon conclusory allegations in affidavits. *Cusson–Cobb v. O'Lessker,* 953 F.2d 1079, 1081 (7th Cir.1992).

During its summary judgment analysis, the court must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Smith v. Fruin,* 28 F.3d 646, 650 (7th Cir.1994), *cert. denied,* 513 U.S. 1083, 115 S.Ct. 735, 130 L.Ed.2d 638 (1995); *Bombard v. Fort Wayne Newspapers, Inc.,* 92 F.3d 560 (7th Cir.1996). The court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts, for these are tasks left to the fact finder at trial. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2505; *Betaco, Inc. v. Cessna Aircraft Co.,* 32 F.3d 1126, 1138 (7th Cir.1994). Furthermore, the court is required to analyze summary judgment motions under the standard of proof relevant to the case or issue. *Anderson,* 477 U.S. at 252–55, 106 S.Ct. 2505.

## III. ANALYSIS

The heart of Watson's complaint is grounded in the Cruel and Unusual Punishment Clause of the Eighth Amendment. The Eighth Amendment mandates that "excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." The language of the Eighth Amendment, by prohibiting and mandating certain types of conduct manifests an intention to "limit the power of those entrusted with the criminal-law function of government." *Whitley v. Albers,* 475 U.S. 312, 318, 106 S.Ct. 1078, 1083, 89 L.Ed.2d 251 (1986) (quoting *Ingraham v. Wright,* 430 U.S. 651, 664, 97 S.Ct. 1401, 1408, 51 L.Ed.2d 711 (1977)). The Cruel and Unusual Punishment Clause of the Eighth Amendment was designed to protect those convicted of crimes from overreaching or excessive punishment by the State or governmental official prosecuting them. *Whitley,* 475 U.S. at 318, 106 S.Ct. at 1083; see also *Revere v. Massachusetts General Hospital,* 463 U.S. 239, 244, 103 S.Ct. 2979, 2983, 77 L.Ed.2d 605 (1983).

■ A violation of the Eighth Amendment's Cruel and Unusual Punishment Clause contains two elements: (1) an injury that is sufficiently serious to deprive the prisoner of minimal civilized necessities and (2) prison officials who acted with deliberate indifference to the deprivation. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Wilson v. Seiter,* 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991); *Wilson v. Vannatta,* 291 F.Supp.2d 811, 815 (N.D.Ind.2003). The first element is an objective inquiry and the second element is a subjective inquiry. Alleged violations of the Eighth

Amendment's prohibition of cruel and unusual punishment must be carefully and thoughtfully scrutinized. What is necessary to establish a violation of the Eighth Amendment's Cruel and Unusual Punishment Clause varies according to the nature of the alleged constitutional violation. *Hudson v. McMillian,* 503 U.S. 1, 6, 112 S.Ct. 995, 998, 117 L.Ed.2d 156.

■ When the inmate alleges that prison officials have failed or denied to attend to the serious medical needs of an inmate, the primary inquiry to be made is whether the prison officers exhibited "deliberate indifference" to the inmate's needs. *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). A prison official's "deliberate indifference" to a substantial risk of serious harm to an inmate violates the Eighth Amendment. *Farmer,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Deliberate indifference is a subjective standard and requires consideration of the prison official's then existing state of mind during the incident alleged to have violated the Constitution. *Id.* Inquiry into the prison official's state of mind is appropriate because the State's responsibility to provide for an inmate's medical needs does not conflict with any competing administrative concern. *Id.; Whitley,* 475 U.S. at 320, 106 S.Ct. at 1085. Further, a prison official cannot be found liable for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety. *Farmer,* 511 U.S. at 837, 114 S.Ct. at 1979; *Riccardo v. Rausch,* 359 F.3d 510, 514. Whether a prison official acted with deliberate indifference is generally a question of fact as to whether the officer knew of a substantial risk and chose to disregard it. *Id.,* 511 U.S. at 840, 114 S.Ct. at 1981.

■ In cases of a prison disturbance a competing administrative concern is appar-

ent and the focus of the inquiry under the Eighth Amendment therefore changes. When a disturbance arises in the prison the officials on duty must concern themselves with institutional safety, including the safety of the officials, other inmates, and any present visitors. The threat of unrest and potential violence must be weighed against the prison official's decision to use force to avert the potential disturbance. *Hudson,* 503 U.S. at 6, 112 S.Ct. at 998. A prison disturbance requires the officers to act quickly and decisively to maintain and/or restore discipline and institutional order. Such decisions and actions are often necessarily made in haste and therefore the courts have recognized that the decisions the officers ultimately make should be "accorded wide-ranging deference in the adoption and execution or policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id.;* (quoting *Bell v. Wolfish,* 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979)).

The Court first introduced the distinction between a prison disturbance and deprivation cases in *Whitley* noting the need for the new standard was due to the existence of the administrative concerns of institutional safety. In *Whitley* an objective inquiry was made by considering whether the force applied in the context of a prison riot was need to maintain and restore prison security was readily apparent and poignantly necessary. *Whitley,* 475 U.S. 312, 106 S.Ct. at 1083. In *Hudson* the Court extended the scope of the object inquiry from riots to any case where the prisoner has alleged that a prison official has exerted excessive physical force in violation of the Cruel and Unusual Punishment Clause. *Hudson,* 503 U.S. at 6–7, 112 S.Ct. at 999. The Court reasoned that haste under which the prison official must

make his decision to use force makes the deliberate indifference standard inappropriate to determine if the force applied violated the Constitution. *Id.*, 503 U.S. at 6, 112 S.Ct. at 998. In cases of alleged use of excessive force the question becomes whether the force applied inflicted "unnecessary and wanton pain and suffering" and the determination ultimately turns on whether the force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.; Whitley*, 475 U.S. at 320–321, 106 S.Ct at 1085, quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir.1973).

The objective question under the Eighth Amendment is to be understood as contextual and responsive to the contemporary standards of decency. *Estelle*, 429 US. at 103, 97 S.Ct. at 290. For not every governmental action affecting the interests or well being of a prisoner is subject to the mandates of the Eighth Amendment. *Whitley*, 475 U.S. at 319, 106 S.Ct. at 1084. The Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition *de minimus* use of physical force provided that the use of force is not of a sort "repugnant to the conscience of mankind." *Id.*, at 327, 106 S.Ct. at 1088. Because the standards of human decency are constantly evolving with society, *Estelle*, 429 U.S. at 102–103, 97 S.Ct. at 290, many circumstances will become relevant to the inquiry of whether the use of force violated the Eighth Amendment. The Supreme Court and several Circuit Courts, including this one, have cited with approval the consideration of the factors first delineated by Judge Friendly in *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir.1973) as guideposts in reaching an ultimate determination of the force applied violated the Eighth Amendment's objective inquiry. See *Whitley*, 475 U.S. at 321, 106 S.Ct. at 1085; *Soto v. Dickey*, 744 F.2d 1260, 1268 (7th Cir.1984); *Stringer v. Rowe*, 616 F.2d 993, 999 (7th Cir.1980).

The factors relevant to the inquiry of whether alleged excessive force was applied in violation of the Eighth Amendment include: (1) the need for the application of the force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury; and (4) whether the force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm. *Whitley*, 475 U.S. at 321, 106 S.Ct. at 1085; *Johnson*, 481 F.2d at 1033. With the proper standard of review and inquiry to be made in place, this Court now addresses the Defendant's motion for summary judgment.

## III. DEFENDANT'S SUMMARY JUDGMENT MOTION

Before directly addressing the case at bar, this Court notes that it is keenly aware of the concerns and trepidations associated with the increased use of the summary judgment as voiced by Professor Arthur R. Miller in his Article "The Pre–Trial Rush to Judgment".[2] Professor Miller admonishes federal district trial judges to be very careful in granting of summary judgments. Bearing in mind that summary judgment affects the plaintiff's right to an adjudicative procedure that comports with due process and the guarantee of trial by jury, this Court is mindful of its obligation " . . . to exercise restraint and

---

**2.** Miller, Arthur R. "The Pretrial Rush to Judgment: Are the 'Litigant Explosion' 'Liability Crisis' and Efficiency Clichés Eroding Our Day in court and Jury Trial Commitments?", 78 N.Y.U.L.Rev. 982 (2003).

refrain from deciding factual issues or applying law to undisputed facts at the summary judgment phase." *Id.* at 1074. Recently, this topic was examined by this Circuit in *Riccardo v. Rausch*, 359 F.3d 510 (7th Cir.2004). The careful reasoning by Judge Easterbrook for the majority is applicable in this case.

■ Even in light of giving all reasonable deference to Watson, this Court finds that summary judgment is appropriate for the Defendants as a matter of law. As Judge Easterbrook found in *Riccardo*, this Court concludes that no reasonable juror would find that Officers Riggle, Hall and Williams acted with deliberate indifference to a risk of substantial injury to Watson when they restrained his wrists to remove his handcuffs.

In addition, consideration of the *Johnson* factors do not lead to the conclusion that the force applied to Watson was malicious or sadistic, but rather was applied in a good faith effort to maintain institutional discipline and avoid a further disturbance. The need to apply some sort of restraining force to Watson's person was necessary so that his handcuffs could be removed. The record reveals that Watson was uncooperative and generally argumentative and thus it was necessary for the officers to apply physical force to Watson to remove the cuffs. The Defendants accused certainly must be afforded some deference in their chosen course of action as Watson's argumentative nature could have quickly turned into a greater disturbance, which would put the officers and other inmates at risk of violence. The Defendants' actions were in the nature of a reasonable effort to maintain institutional discipline and safety.

The extent of Watson's injury is one factor to consider but is not dispositive of the question of whether the use of force was necessary or otherwise wanton. *Hudson*, 503 U.S. at 7, 112 S.Ct. at 999. While not an absolute indication of the absence of excessive force this Court considers the fact that little medical attention was required for Watson's injuries as relevant to a conclusion that the force applied was reasonable. Watson must overcome the required showing or more then a *de minimus* injury to show that the force he was subjected to constituted discomfort beyond that which is routinely part "part of the penalty that criminal offenders pay for their offenses against society." *Hudson*, 503 U.S. at 9, 112 S.Ct. at 1000 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 346, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)). This Court's conclusion that Watson has not overcome the *de minimus* level is further bolstered by the decision in *Fillmore v. Page*, 358 F.3d 496 (7th Cir.2004), which is factually similar with the case currently before it.

In *Fillmore*, the reviewing court found that the bumping and sore wrists that the petitioner experienced during a transfer did not overcome the *de minimus* threshold necessary to find an Eighth Amendment violation for excessive force. The evidence presented in *Fillmore* failed to show petitioner had suffered any significant discomfort and showed that petitioner had failed to request or require medical attention. The *Fillmore* Court concluded that the force applied to the petitioner did not violate the Constitutional mandates of the Eighth Amendment.

Watson has alleged the use of excessive force during the removal his handcuffs through the cuff port of his cell. However nothing in his complaint appears to suggest that Watson experienced a level of discomfort necessary to satisfy the Eighth Amendment *de minimus* requirement nor that the force applied was "repugnant to the conscience of mankind." Though Watson did seek medical assistance for his alleged injury, this Court's conclusion that

Watson has not overcome his *de minimus* burden is bolstered by the fact that examination reveal no serious injury requiring any short of real medical assistance.

The Court concludes that Watson has failed to show that force applied to him was in not good faith or was exerted in a malicious or sadistic manner. Additionally, this Court considers the force applied by the Defendants as consistent with the officers' administrative duties to avoid further disturbance and maintain institution order and discipline.

## IV. CONCLUSION

Therefore after careful review, this Court finds that the Defendants as a matter of law are entitled to summary judgment, and **GRANTS** the motion for summary judgment in favor of the Defendants, and **ORDERS** that each party pay its own costs and the Clerk enter judgment according for the Defendants and against this Plaintiff.

**IT IS SO ORDERED.**