TALLMAN, Circuit Judge,
concurring in part and dissenting in part:
I concur in the disposition except for the remand on plaintiffs’ excessive force claim. On all claims, I would hold Officer Bex is entitled to qualified immunity and would affirm entry of summary judgment for all defendants.
At the time of Maekovski’s arrest, Officer Bex had ample probable cause to believe that Mackovski was armed and dangerous. Police had already connected Mackovski to his accomplice, a convicted felon and known methamphetamine manufacturer and distributor, Micky Aposto-lovic. An earlier search of Apostolovic’s residence (the “Chapman property”) had revealed methamphetamine, marijuana, and chemicals and glassware used in the manufacturing of methamphetamine. Police had also discovered ammunition and a cache of weapons, including a .22-cali-ber rifle, an “Uzi” submachine gun and “silencer,” a loaded .380 Smith and Wesson revolver, a live hand grenade, and two pipe bombs that had to be disarmed by the Orange County Sheriffs Department Bomb Squad. A reliable informant told police that, after the search, Mackov-ski had removed additional weapons from the Chapman property that police had failed to locate. Indeed, one weapon—a chrome, western-style revolver—that had gone missing from the Chapman property was recovered during the search of Mackovski’s residence on June 18, 2010, *656 along with marijuana intended for distribution.
In sum, at the time Officer Bex executed the warrant for Mackovski’s arrest, reasonable officers could objectively believe that they were making a high-risk, felony arrest of a suspect known to carry weapons and involved with others’ serious crimes. The recovery of the revolver at Mackovski’s residence—which Officer Bex reasonably believed Mackovski had removed at Apostolovic’s direction and to assist Apostolovic in evading further detection by law enforcement—belies the majority’s assertion that police had “no evidence” to connect Mackovski with Aposto-lovic’s criminal activities. The scope of substantive criminal liability easily encompasses the conduct of both men, and a reasonable officer would exercise great caution in apprehending either of them.
The Fourth Amendment permits police officers to use force as reasonably necessary to effectuate an arrest and neutralize any ongoing threat to the officers and others, even if doing so causes some injury. Jackson v. City of Bremerton, 268 F.3d 646, 650, 652-53 (9th Cir. 2001) (finding no Fourth Amendment violation where police officers pushed an arrestee to the ground to handcuff her, pulled her up to her feet, and put her in a police vehicle in ninety-degree heat with the windows rolled up, and the arrestee suffered a fractured finger); see also Saucier v. Katz, 533 U.S. 194, 208-09, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (finding that officers did not violate clearly established Fourth Amendment law by shoving a protestor wearing a leg brace into a military police van). “Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.” Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). As the Supreme Court has reminded us, “ ‘[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge’s chambers,’ violates the Fourth Amendment.” Id. (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)).
The intrusion on Mackovski’s Fourth Amendment interests was minimal. Mack-ovski states that during the arrest he was on the ground when officers handcuffed him and then “jumped all over him.” Even assuming that Mackovski’s statement can be construed to mean that Officer Bex “tackled” Mackovski after he was forced to the ground and handcuffed, as the majority suggests, Officer Bex was justified in using force to subdue this dangerous suspect. After the officers “jumped all over him,” Mackovski alleges they pulled his arms back and he blacked out. According to hospital records, Mackovski’s injuries were limited to “bruises and abrasions.” As the district court noted, “[ajdmittedly, the .officers did not treat Mr. Mackovski gently, but such facts demonstrate a minimal to moderate intrusion, at most.”
Balancing the “nature and quality of the intrusion” on Mackovski’s Fourth Amendment rights against the officers’ interests in making a safe arrest clearly favors the officers here. If we are to take Supreme Court doctrine seriously and view the reasonableness of the arrest “in light of the facts and circumstances confronting [officers]” at the time, id. at 397, 109 S.Ct. 1865, then we should find as a matter of law that Officer Bex’s use of force was justified to apprehend a known dangerous suspect. I fear that decisions like this one are converting federal civil rights actions into common law negligence suits. That was not the evil Congress was addressing in the post-Civil War era when section 1983’s predecessor was enacted into law. I would grant summary judgment for the *657 defendants on plaintiffs’ excessive force claim and affirm the district court’s judgment in its entirety.